Laurence Rosen, Esq.
**THE ROSEN LAW FIRM, P.A.**
236 Tillou Road
South Orange, NJ 07079
Telephone: (973) 313-1887
Fax: (973) 833-0399
lrosen@rosenlegal.com

Counsel for Plaintiff

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DAVID BRAVETTI, Derivatively, on behalf of AMERICAN ORIENTAL BIOENGINEERING, INC., | CASE No.: |
| Plaintiff, | VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT |
| vs. | **JURY TRIAL DEMANDED** |
| TONY LIU, YANCHUN LI, BINSHENG LI, JUN MIN, LAWRENCE WIZEL, COSIMO PATTI, XIANMIN WANG, BAIQING ZHANG AND EILEEN BRODY | |
| Defendants, -and- | |
| AMERICAN ORIENTAL BIOENGINEERING, INC., a Nevada Corporation. | |
| Nominal Defendant. | |

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment (the "Complaint") against the defendants named herein.

## I.      NATURE AND SUMMARY OF THE ACTION

1.       This is a shareholder derivative action brought by plaintiff on behalf of nominal defendant American Oriental Bioengineering, Inc. ("AOB" or the "Company") against certain of its officers and directors for breaches of fiduciary duties, waste of corporate assets, and unjust enrichment.  These wrongs have decimated AOB's reputation, goodwill, and standing in the business community, resulting in of millions of dollars in damages.  Moreover, defendants' actions have exposed the Company to millions of dollars in potential liability for violations of federal law.

2.       AOB publicly presents itself as "dedicated to health improvement" by engaging in the development, manufacturing, and commercialization of a range of pharmaceutical and healthcare products in China … "focusing on the Chinese drug market with [emphasis] in research application".  The company reported quarterly ("10-Q") and year-end ("10-K") financial statements filed with the SEC from the third quarter ending September 30, 2009 until the third quarter ending September 30, 2011.  They were signed, at various times, by defendant Tony Liu ("Liu") – AOB's Chief Executive Officer ("CEO") and Chairman of the Board; Yanchun Li ("Li") – AOB's Chief Financial Officer ("CFO") and Director; Binsheng Li ("B. Li") – AOB's Chief Accounting Officer until November 2011 and Director until December 2011; Jun Min ("Min") – AOB's Vice President and Director;  Lawrence Wizel ("Wizel") – AOB's Director until May 2012 and former Chairperson of Audit Committee Chairman; Cosimo Patti ("Patti") – AOB's Director and member of the Audit Committee; Xianmin Wang ("Wang") – AOB's Director and member of the Audit Committee; Baiqing Zhang

("Zhang") – AOB's Director; and Eileen Brody ("Brody") – AOB's Director until December 2011 and former member of the Audit Committee; (collectively the "Individual Defendants").  Completely unbeknownst to the investing public, these SEC filings falsely stated AOB's financial results and effectiveness of its disclosure and internal controls over financial reporting.

3.    The pubic first began to learn the truth behind the Company's purportedly sound and accurate financial reports on November 14, 2011 when AOB filed its amended 2010 10-K/A.  It disclosed accounting errors pertaining to the Company's equity interest in the wholesale and distribution affiliate of Nuo Hua Investment Company Limited ("Nuo Hua Affiliate") and the need for the restatement of related prior financial results.

4.    The truth was further revealed on March 16, 2012 when AOB filed its 8-K disclosing that its auditor, Ernst and Young ("EY"), had informed the Company that it found some inconsistencies during the course of its audit of the Company for fiscal year 2011.  On the same day, trading in the Company's stock was halted.  Scrutiny into the Company's financial results later forced the Company to reveal that its prior financial statements issued between November 16, 2009 and June 15, 2012, inclusive, (the "Relevant Period") should no longer be relied upon and had to be restated.

5.    On June 15, 2012, the allegations that the Company's financial results during the Relevant Period were inaccurate and could not be relied upon were confirmed by EY.

6.    Rather work to address these issued, AOBI's management dismissed EY as its independent registered public accounting firm.  On the same day, EY issued a letter to

AOB and withdrew its reports on the financial statements and related internal control over financial reporting for the years ended and as of December 31, 2009 and 2010, and stated that they could no longer be relied upon.

7.      EY also concluded that it was unable to rely on management's representations provided in connection with its audits of the financial statements for the years ended December 2009 and 2010, the effectiveness of the Company's internal control over financial reporting as of December 31, 2009 and 2010, and its review of the Company's unaudited interim financial information for the quarters ended September 30, 2009 through September 30, 2011.

8.      The Individual Defendants' materially false and improper statements concerning the Company's audit and accounting controls and financial results have devastated the Company and its credibility.  The Company has already notified the U.S. Securities and Exchange Commission ("SEC") of its inability to timely file its annual report for fiscal 2011, and has indefinitely postponed any future earnings conference calls.  In the wake of the foregoing events, AOB's market capitalization has plunged by more than 61.2% from March 16, 2012 to May 29, 2012, the day trading resumed on the exchange for the Company's stock[1].

9.      The Company also faces millions of dollars in civil liability arising from the Individual Defendants' misconduct, as investors have filed a federal class action lawsuit against AOB, defendant Liu, Li, B. Li, Wizel, Patti, Wang and Brody.  The Class

---

[1] AOB closing stock price on March 16, 2012 was $1.52 when trading was halted. When trading resumed on May 29, 2012, AOB stock closed at $.58 after hitting a low of $.06, representing a price drop of $.94/share.

Action complaints allege improper statements in AOB's public filings, press releases, and earnings conference calls regarding the Company's true financial health and internal audit controls.

10.     In sum, the Individual Defendants breached their fiduciary duties by knowingly or recklessly filing materially false and misleading financial statements as well as omitting to state material facts that rendered their affirmative statements misleading as related to the Company's financial performance, business prospects, and true financial condition.  Specifically, the Company's directors filed reports with the SEC that falsely stated, after review by AOB's CEO and CFO, that AOB's disclosure controls and internal control over financial reporting were effective and financial results were accurate.  These improper statements furthered the Individual Defendants' scheme to conceal the Company's true financial weaknesses and perpetuate the façade that the Company was fiscally strong.  When EY identified major issues and deficiencies concerning the Company's financial disclosures and internal audit controls for the years lasting from 2009-2011, the Individual Defendants merely dismissed EY as their auditor in an effort to cover up their scheme to defraud investors.  Henceforth, Individual Defendants failed to take proper corrective measures to insulate the Company from further harm in direct contravention of their fiduciary duties.

## II.     JURISDICTION AND VENUE

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332 in that the amount in controversy exceeds $75,000.00 exclusive of interest and costs and.  Plaintiff is a citizen of New Jersey.  None of the Defendants is a

citizen of New Jersey.

12.     Each Defendant has minimum contacts with the U.S. and New Jersey, as they have contracted in New Jersey and the U.S., or have frequently traveled here, on AOB business and otherwise, or have authorized acts and actions which have had a sufficient impact in the U.S. or on AOB's shareholders and investors residing here to justify the exercise of jurisdiction over them.

13.     This action is not a collusive one designed to confer jurisdiction upon a court of the United States that it would not otherwise have.

14.     Venue is proper in this district pursuant to 28 U.S.C. §1391(a) and 1401 because a substantial portion of transactions and wrongs complained of herein occurred in this district.   Many of the Company's announcements during the relevant period indicate they were issued from Newark, New Jersey.   Further, Defendants have received substantial compensation in this district by engaging in numerous activities in this District.

## III.   PARTIES

### A.   Plaintiff

15.      Plaintiff David Bravetti is a shareholder of AOB. Plaintiff was a shareholder at the time of the wrongdoing of which he complains and has continuously been a shareholder.  Plaintiff holds over 100,000 shares of AOB common stock.

### B.   Nominal Defendant

16.     Nominal defendant AOB is a corporation organized under the laws of Nevada.  AOB is a pharmaceutical company headquartered in the People's Republic of

China ("PRC").   The Company operates under the following businesses model: (i) development; (ii) manufacture; and (iii) distribution of pharmaceutical and healthcare products. The Company ostensibly sells its products primarily to hospitals, clinics, pharmacies, and retail outlets in China through its sales professionals and distributors. AOB's only US office is located at 211 Warren Street Suite 219, Newark, NJ 07103.

### C.   Individual Defendants

17.   Defendant Liu is AOB's principal founder, CEO and Chairman of the Board since December 2001.  Defendant Liu knowingly or recklessly: (i) made improper statements regarding the Company's financial results and business operations; (ii) failed to implement an effective system of internal financial controls; (iii) actively obstructed the audit process; and (iv) failed to take corrective measures to protect the Company from incurring further harm.  Defendant Liu is named as a defendant in a securities class action complaint that alleges he violated Section 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").   AOB paid defendant Liu the following compensation as an executive:

| Year | Salary | Stock Awards | Total($) |
|------|--------|--------------|----------|
| 2010 | $200,000 | $538,000 | $738,000 |

18.   Defendant Li is AOB's co-founder, Chief Financial Officer since May 2007 and Director since May 2002.  Defendant Li knowingly or recklessly: (i) made improper statements regarding the Company's financial results and business operations; (ii) failed to implement an effective system of internal financial controls; (iii) actively obstructed the audit process; and (iv) failed to take corrective measures to protect the Company from

incurring further harm.  Defendant Li is named as a defendant in a securities class action complaint that alleges he violated Section 10(b) and 20(a) of the Exchange Act. AOB paid defendant Li the following compensation as an executive:

| Year | Salary | Stock Awards | Total($) |
|------|--------|--------------|----------|
| 2010 | $160,000 | $475,200 | $635,200 |

19.    Defendant B. Li was AOB's co-founder, Chief Accounting Officer from 2002 until his suspension in November 2011 and Director from 2002 until he declined to stand for re-election to the Board at the Company's annual meeting held on December 28, 2011.  AOB never filed a Form 8-K with the SEC indicating his employment agreement with the Company was ever terminated.   Defendant B. Li knowingly or recklessly: (i) made and allowed improper statements regarding the Company's financial results and business operations; (ii) failed to implement an effective system of internal financial controls; (iii) actively obstructed the audit process; and (iv) failed to take corrective measures to protect the Company from incurring further harm.  Defendant B. Li is named as a defendant in a securities class action complaint that alleges he violated Section 10(b) and 20(a) of the Exchange Act.  AOB paid defendant B. Li the following compensation as an executive:

| Year | Salary | Stock Awards | Total ($) |
|------|--------|--------------|-----------|
| 2010 | $80,000 | $293,600 | $373,600 |

20.    Defendant Min is AOB's co-founder, Vice President and Director since 2002.  Defendant Min knowingly or recklessly: (i) made improper statements regarding the Company's financial results and business operations; (ii) failed to implement an

effective system of internal financial controls; (iii) actively obstructed the audit process; and (iv) failed to take corrective measures to protect the Company from incurring further harm. AOB paid defendant Li the following compensation as an executive:

| Year | Salary | Stock Awards | Total($) |
|------|--------|--------------|----------|
| 2010 | $120,000 | $356,400 | $476,400 |

21.    Defendant Wizel was AOB's Director from August 2006 until his abrupt resignation in May 2012.  Wizel served as the Chairperson of the Audit Committee member of the Compensation Committee and member of the Nominating and Corporate Governance Committee.  Wizel also served as Chairman and member of the Audit Committee of Puda Coal, Inc., an outright Chinese reverse merger fraud.  Defendant Wizel knowingly or recklessly: (i) made and allowed improper statements regarding the Company's financial results and business operations; (ii) failed to implement an effective system of internal financial controls.  Defendant Wizel is named as a defendant in a securities class action complaint that alleges he violated Section 10(b) and 20(a) of the Exchange Act.

22.    Defendant Patti is AOB's Director since September 2004.  Pattie has served as a member of AOB's Audit Committee, Compensation Committee and Nominating and Corporate Governance Committee.  Patti also served as a Director and Audit Committee member at Advanced Battery Technologies, a notorious Chinese reverse merger fraud.  Defendant Patti knowingly or recklessly: (i) made and allowed improper statements regarding the Company's financial results and business operations; and (ii) failed to implement an effective system of internal financial controls.  Defendant Patti is named as

a defendant in a securities class action complaint that alleges he violated Section 10(b) and 20(a) of the Exchange Act.

23.    Defendant Wang is AOB's Director since January 2005.  Wang has served as the Chairperson of the Nominating and Corporate Governance Committee and a member of AOB's Audit Committee.  Defendant Wang knowingly or recklessly: (i) made and allowed improper statements regarding the Company's financial results and business operations; and (ii) failed to implement an effective system of internal financial controls. Defendant Wang is named as a defendant in a securities class action complaint that alleges he violated Section 10(b) and 20(a) of the Exchange Act.

24.    Defendant Zhang is AOB's Director since 2006. Zhang serves as a member of AOB's Nominating and Corporate Governance Committee.   Defendant Zhang knowingly or recklessly: (i) made and allowed improper statements regarding the Company's financial results and business operations; and (ii) failed to implement an effective system of internal financial controls.

25.    Defendant Brody was AOB's Director from June 2005 until she declined to stand for re-election to the Board at the Company's annual meeting held on December 28, 2011.  Brody served as the Chairperson of the Compensation Committee, member of the Nominating and Corporate Governance Committee and member of the Audit Committee.   Brody also served as a Director and Audit Committee member of the infamous Chinese reverse merger fraud Fuqi International, Inc.   Defendant Brody knowingly or recklessly: (i) made and allowed improper statements regarding the Company's financial results and business operations; and (ii) failed to implement an

effective system of internal financial controls.  Defendant Brody is named as a defendant in a securities class action complaint that alleges he violated Section 10(b) and 20(a) of Exchange Act of 1934.

## IV.    DUTIES OF THE INDIVIDUAL DEFENDANTS

### A.    Fiduciary Duties

26.    By reason of their positions as officers, directors, and/or fiduciaries of AOB and because of their ability to control the business and corporate affairs of AOB, the Individual Defendants owed and owe AOB and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care and were and are required to use their utmost ability to control and manage AOB in a fair, just, honest and equitable manner.  The Individual Defendants were and are required to act in furtherance of the best interests of AOB and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

27.    Each officer and director of the Company owes to AOB and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information.

### B.    Code of Ethics Applicable to Directors, Officers and Employees

28.     Since at least 2005, and updated in February 2008, the Company had in place its Code of Ethics and Business Conduct for Officers, Directors and Employees of AOB (the "Code") which promotes "ethical conduct and integrity generally of the company."  The Code, in its name and according to its provisions, apply to all "directors, officers, and employees of the Company", proscribing duties and responsibilities owed to other employees, the Company, and stakeholders.   According to the Code, AOB's officers, directors, and employees are responsible for promoting the "accurate, fair and timely reporting of [the] company's financial results and condition and other information … released to the public market, including reports filed with the SEC."

29.     The Code also enforces the ideal of "acting in the scope of … [one's] duties in a manner which promotes full, fair, accurate, timely and understandable disclosure in reports and documents that the company files with, or submits to government agencies and in the company's other public communications."   Furthermore, the Code requires employees to "act in good faith, responsibly, with due care, competence and diligence, without misrepresenting material facts or allowing one's independent judgment to be subordinated."

### C.     Audit Committee Duties

30.     In addition to these duties, under AOB's Board's Audit Committee Charter in effect since at least October 2008, defendants Patti, Wang, Brody, and Wizel, as members of the Audit Committee, owed specific duties to the Company.  According to the Audit Committee Charter, defendants Patti, Wang, Brody and Wizel had a duty and responsibility to oversee on behalf of the board of directors:

- the company's accounting and financial reporting processes and the integrity of its financial statements;

- the audits of the company's financial statements and the appointment, compensation, qualifications, independence and performance of the company's independent auditors;

- the company's compliance with legal and regulatory requirements;

- the performance of the company's internal audit function and internal control over financial reporting; and

- the preparation of the audit committee report that SEC rules require the company to include in its annual proxy statement.

**D.  Control, Access, and Authority**

31.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of AOB, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

32.     Because of their advisory, executive, managerial and directorial positions with AOB, each of the Individual Defendants had access to adverse, non-public information about the financial condition and internal audit controls of the Company.

33.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of AOB, and was at all times acting within the course and scope of such agency.

**E.  Reasonable and Prudent Supervision**

34.     To discharge their duties, the officers and directors of AOB were required to exercise reasonable and prudent supervision over the management, policies, practices,

and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of AOB were required to, among other things:

(a)     properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial health;

(b)     ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate' statements to the investing public;

(c)     conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)     remain informed as to how AOB conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(e)     ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules, and regulations.

### F.  Breaches of Duties

35.     Each Individual Defendant, by virtue of his or her position as an officer and/or director, owed to the Company and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and

administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of AOB, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company.  The conduct of the Individual Defendants who were also officers and/or directors of the Company have been ratified by the remaining Individual Defendants who collectively comprised all of AOB's Board.

36.    The Individual Defendants breached their duty of loyalty and good faith by: (i) allowing the Individual Defendants to cause or by themselves causing the Company to issue improper statements regarding AOB's financial results; (ii) failing to implement an effective system of internal and financial controls; and (iii) failing to implement corrective measures to protect the Company from incurring further harm caused by the improper statements.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  In addition, as a result of the Individual Defendants' illegal actions and courses of conduct, the Company is now the subject of several class action lawsuits that allege violations of securities laws.  As a result, AOB has expended, and will continue to expend significant sums of money while its reputation has been severely damaged.

## V.    CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

37.     In committing the wrongful acts alleged herein, the Individual Defendants have pursued or joined in the pursuit of a common course of conduct, and have acted in concert with and conspired with one another in furtherance of their common plan or design.  In addition to the wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

38.     During all times relevant hereto, the Individual Defendants, collectively and individually, initiated a course of conduct that was designed to and did: (i) deceive the investing public, including shareholders of AOB, regarding the Individual Defendants' oversight of AOB's operations and financial statements; and ii) enhance the Individual Defendants' executive and directorial positions at AOB and the profits, power, and prestige that the Individual Defendants enjoyed as a result of holding these positions. In furtherance of this plan, conspiracy, and course of conduct, the Individual Defendants, collectively and individually, took the actions set forth herein.

39.     The Individual Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.  The purpose and effect of the Individual Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, and unjust enrichment.

40.     The Individual Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly release improper statements and effectively concealing the reckless and gross

mismanagement of the Company.  Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

41.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Individual Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## VI.    AOB'S FALSE AND MISLEADING FINANCIAL REPORTS AND THE STATEMENTS THAT ACCOMPANIED IT

42.    The Individual Defendants made improper statements regarding their financial results and business operations that misreported the Company's revenues, earnings, and cash balances.  These improper statements primarily pertain to AOB's purported equity interest in the Nuo Hua Affiliate and the Company's inadequate disclosure and internal controls over its financial reporting.

43.    On October 18, 2008, AOB acquired a 30% equity interest in the Nuo Hua Affiliate for $33.0 million, which increased the distribution capacity for the more than 6,000 pharmaceutical products AOB already offers.  This contributed to the remarkable increase in revenue and earnings reported by AOB and reflected in its stock price.

44.     The improper statements started on November 16, 2009, when AOB filed issued a materially false and misleading Form 10-Q with the SEC for the third quarter ended September 30, 2009.  The Third Quarter 2010 10-Q was signed by defendants Liu and Li.  Attached to the Third Quarter 10-Q were SOX certifications of Liu and Li falsely attesting to its accuracy.  According to the Third Quarter 10-Q, there were no changes in the Company's internal control over financial reporting for the period "that has materially affected, or is reasonably likely to materially affect, out internal control over financial reporting."  It also noted some prior internal control issues but falsely reassured investors that "[w]e have taken appropriate steps and actions to prevent these errors in the future, including the implementation of a new company-wide review and reporting system to improve processes and strengthen controls throughout the Company."

45.     On March 15, 2010, AOB filed a materially false and misleading Form 10-K for the fiscal year ended December 31, 2009.  The 2009 10-K was signed by defendants Liu, Li, Min, B. Li, Patti, Wang, Brody, Wizel, and Zhang.  Attached to the 2009 10-K were SOX certifications of Liu and Li falsely attesting to its accuracy.  The 2009 10-K falsely stated that, after review by AOB's CEO and CFO, that AOB's disclosure controls and internal control over financial reporting were effective.

46.     On May 10, 2010 AOB filed with the SEC its 10-Q for the first quarter ended March 31, 2010. The First Quarter 2010 10-Q was signed by defendants Liu and Li.  Attached to the First Quarter 2010 10-Q were SOX certifications of Liu and Li falsely attesting to its accuracy.  The First Quarter 2010 10-Q falsely stated that: (a) the Company's disclosure controls and procedures were effective; and (b) there were no

material changes that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

47.     On August 9, 2010, AOB filed with the SEC its 10-Q for the second quarter ended June 30, 2010.  The Second Quarter 2010 10-Q was signed by defendants Liu and Li.  Attached to the 10-Q were SOX certifications of Liu and Li falsely attesting to its accuracy.  The Second Quarter 2010 10-Q falsely stated that: (a) the Company's disclosure controls and procedures were effective; and (b) there were no material changes that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

48.     On September 27, 2010, AOB entered into an equity transfer agreement with a third party and agreed to sell its equity interest in the Nuo Hua Affiliate for approximately $38.6 million, consisting of $22.5 million in cash and $16.1 million in equity interests of another company owned by the third party buyer.  At the time of the agreement, the value received for the sale was less than the carrying value of the Company's investment.  The Defendants failed to disclose this transaction.

49.     While AOB's equity interest in the Nuo Hua Affiliate was transferred to the third party buyer in October 2010, the Company did not received any consideration until well over a year later, on or around January 12, 2012 at the earliest.

50.     On November 9, 2010, AOB filed with the SEC its 10-Q for the third quarter ended September 30, 2010.  The Third Quarter 2010 10-Q was signed by defendants Liu and Li.  Attached to the Third Quarter 10-Q were SOX certifications of Liu and Li falsely attesting to its accuracy.  The 10-Q falsely stated that: (a) the

Company's disclosure controls and procedures were effective; and (b) there were no material changes that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

51.     Moreover, the Third Quarter 2010 10-Q failed to disclose that AOB agreed to sell its interest for a loss on September 27, 2010 and transferred it to a third party in October 2010, which both occurred prior to the filing of the Third Quarter 2010 10-Q. Rather, it stated that the Company continued to own a 30% in the Nuo Hua Affiliate.

52.     On November 10, 2010, AOB held a conference call with analysts pertaining to the financial results reported in its Third Quarter 2010 10-Q.   Despite having already signed the undisclosed agreement for the sale of the Nuo Hua Affiliate, a Company representative touted its noteworthy expansion of market coverage for the Company's products in stating:

> In our Distribution segment, we generated $4.1m from our distribution
>
> business, Nuo Hua, in the third quarter of 2010.  An increase of 14.4% was
>
> mainly attributed to Nuo Hua's expanding market coverage.

53.     On March 15, 2011, AOB filed with a materially false and misleading Form 10-K for the fiscal year ended December 31, 2010. The 2010 10-K was signed by defendants Liu, Li, Min, B. Li, Patti, Wang, Brody, Wizel, and Zhang.  Attached to the 2010 10-K were SOX certifications of Liu and Li falsely attesting to its accuracy.  The 2010 10-K falsely stated that, after review by AOB's CEO and CFO, that AOB's disclosure controls and internal control over financial reporting were effective.

54.     In addition, the 2010 10-K failed to disclose that AOB agreed to sell its interest at a loss for approximately $38.6 million on September 27, 2010 and transferred it to a third party in October 2010.  Rather, it stated that the Company continued to own a 30% interest in the Nuo Hua Affiliate and listed such interest on its balance sheet as a "long-term investment and advances" for approximately $39.9 million.

55.     On the same day, AOB held a conference call with analysts to discuss the financial results reported in the 2010 10-K.  Even though the Company have already sold its interest in the Nuo Hua Affiliate to a third party, a Company representative lauded its significant contribution to the Company's performance in stating:

> The Company generated $3.9m from its Distribution business, Nuo Hua, in the fourth quarter of 2010, an increase of 10.2%, from $3.6m in the prior-year period, mainly due to Nuo Hua's expanding market coverage.

56.     On May 10, 2011, AOB filed with the SEC its 10-Q for the first quarter ended March 31, 2011. The First Quarter 2011 10-Q was signed by defendants Liu and Li.  Attached to the 10-Q were SOX certifications of Liu and Li falsely attesting to its accuracy.  The First Quarter 2011 10-Q falsely stated that: (a) the Company's disclosure controls and procedures were effective; and (b) there were no material changes that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

57.     Furthermore, the First Quarter 2011 10-Q continued to state its 30% ownership interest in the Nuo Hua Affiliate despite the sale and transfer of such interest in the fourth quarter of 2010.  Even though AOB no longer retained an interest in the Nuo Hua Affiliate, the Company nevertheless carried it on its balance sheet as a "long-term

investment and advances" and reported generating approximately $3.3 million in revenue from it.

58.     On the same day, AOB held a conference call with analysts to discuss the financial results reported in the First Quarter 2011 10-Q.  Although the Company have already sold and transferred its interest in the Nuo Hua Affiliate several months earlier, a Company representative praised its important contribution to the Company's financial performance in stating:

> The Company generated $3.3m from its distribution business Nuo Hua in the first quarter of 2011 compared to $3.2m in the prior year term.

59.     On August 9, 2011 AOB filed with the SEC its 10-Q for the second quarter ended June 30, 2011. The Second Quarter 2011 10-Q was signed by defendants Liu and Li.  Attached to the 10-Q were SOX certifications of Liu and Li falsely attesting to its accuracy.  The 2011 10-Q falsely stated that: (a) the Company's disclosure controls and procedures were effective; and (b) there were no material changes that has materially affected, or is reasonably likely to materially affect, our internal control over financial reporting.

60.     Additionally, the Second Quarter 2011 10-Q continued to state its ownership interest in the Nuo Hua Affiliate despite its sale and transfer of such interest in the fourth quarter of 2010:

> On June 3, 2011, Nuo Hua Affiliate received additional capital contributions from an investor, which caused the Company's ownership percentage to decrease from 30% to 12.6% and to lose the ability to exercise significant influence over the operating and financial policies of Nuo Hua Affiliate. Prior to the change in ownership, investment in Nuo Hua Affiliate was accounted for under the equity method. As a result of the

change in ownership, the Company discontinued the equity method at the time significant influence was lost and recognized a gain of $0.76 million which was recorded in "Gain (loss) on changes in ownership of unconsolidated entities" in the consolidated statements of income and comprehensive income. The carrying amount of the investment was $41,772,510 as of June 30, 2011, which was determined by the equity method prior the change in ownership as the new basis when reclassifying the investment.

It also continued to carry its purported interest in the Nuo Hua Affiliate as a long term investment on its balance sheet and reported generating approximately $3.8 million in revenue from it.

61.    On the same day, AOB held a conference call with analysts to discuss the financial results reported in the Second Quarter 2011 10-Q.  Although the Company have already sold and transferred its interest in the Nuo Hua Affiliate in  the fourth quarter of 2010, a Company representative commended its notable contribution to the Company's financial performance in stating:

> The Company generated $3.8m from its distribution business, Nuo Hua, in the second quarter of 2011, an increase of 5.3%, from $3.6m in the prior year period…

> The Company recognized a gain of $1.4m due to the change in ownership of unconsolidated entities, including investment in Nuo Hua Affiliates and Aoxing Pharmaceutical Company. Net income attributable to controlling interests for the second quarter of 2011 was $43.6m, or $0.05 per diluted share, compared to $5.1m or $0.07 per diluted share in the prior period.

## VII.   THE PUBLIC LEARNS OF THE INDIVIDUAL DEFENDANTS' MISMANAGEMENT OF THE COMPANY AND IMPROPER STATEMENTS

62.    The truth behind the Company's financial condition and lack of adequate internal financial controls came to the public forefront beginning with AOB's filing of the amended 2010 10-K/A on November 14, 2011, which was signed by each Individual

Defendant and stated in relevant part:

Explanatory Note

This Amendment No. 1 on Form 10-K/A (the "Form 10-K/A") amends the Annual Report on Form 10-K for the year ended December 31, 2010 filed by American Oriental Bioengineering, Inc. (the "Company"), which was originally filed with the Securities and Exchange Commission on March 15, 2011 (the "Original Report").

Subsequent to the issuance of the consolidated financial statements as of and for the fiscal year ended December 31, 2010, the Company's Independent Registered Public Accounting Firm identified accounting errors related to the Company's equity investment in Nuo Hua Affiliate.

The Company and the Audit Committee undertook a review to determine the total amount of the errors and the accounting periods in which the errors occurred and concluded that the Company's previously-issued 2010 audited consolidated financial statements and unaudited interim condensed consolidated financial statements as of September 30, 2010, March 31, 2011 and June 30, 2011, should be, and accordingly, have been restated because of these accounting errors.

On September 27, 2010, the Company entered into an equity transfer agreement with an unrelated third party pursuant to which the Company agreed to sell its equity interest in Nuo Hua Affiliate, for a consideration of RMB255,000,000 ($38,567,410), with RMB148,543,200 ($22,466,378) to be paid in cash and RMB106,456,800 ($16,101,032) to be paid in equity interests of another company owned by the third party buyer.  In October 2010, the Company's equity interest in Nuo Hua Affiliate was legally transferred to the third party buyer. As of December 31, 2010 and up to November 14, 2011, the Company has not received the consideration from the third party buyer.

The Company did not appropriately account for this transaction in its financial statements as filed with the Securities and Exchange Commission for the year ended December 31, 2010 or the quarters ended September 30, 2010, March 31, 2011 or June 30, 2011.

The errors made in accounting for this transaction resulted in:

- For the quarter ended September 30, 2010, the recognition of an impairment loss and a corresponding reduction in the carrying amount of the equity investment.

24

- For the year ended December 31, 2010, a reclassification from "Investments in and advances to equity investments" to "Receivables for disposal of equity investments"; the recognition of a loss on disposal of equity investment; the reversal of income in equity earnings in unconsolidated entities, and the recording of income tax expense and a corresponding unrecognized tax benefits liability due to the tax effect of the capital gain resulting from the transaction, as the equity interest in Nuo Hua Affiliate was initially purchased at a price that was lower than the disposition consideration

- For the quarter ended March 31, 2011, a reclassification from "Investments in and advances to equity investments" to "Receivables for disposal of equity investments", and the reversal of income in equity earnings in unconsolidated entities.

- For the quarter ended June 30, 2011, a reclassification from "Investments in and advances to equity investments" to "Receivables for disposal of equity investments"; the reversal of income in equity earnings in unconsolidated entities, and the reversal of a gain on change in ownership of unconsolidated entities.

In the unaudited interim consolidated financial statements as of June 30, 2011, the Company disclosed that it had lost the ability to exercise significant influence over the operating and financial policies of Nuo Hua Affiliate due to a change in ownership. As a result, it discontinued the equity method by reclassifying the investment in Nuo Hua Affiliate to "other long-term investment" in the consolidated balance sheet and recognized a gain of $759,338 which was recorded in "Gain on changes in ownership of unconsolidated entities" in the consolidated statements of income and comprehensive income.  As the investment in Nuo Hua Affiliate had been disposed as of December 31, 2010, the gain of $759,338 recognized as of June 30, 2011 was also an error as discussed above.

The Audit Committee and Company management requested outside legal counsel to perform a review of the matter and as a result, it was determined that the above-mentioned accounting errors occurred because the Company's Chief Accounting Officer did not provide adequate disclosures with respect to the transaction at the outset, received knowingly-falsified documentation from the legal representative for Nuo Hua  with respect to the transaction, and  subsequently provided that documentation to the Company's Independent Public Accounting Firm in an attempt to  provide

evidential matter that would appear to appropriately support the transaction to the Company's Independent Public Accounting Firm with respect to the accounting treatment adopted by the Company for the Nuo Hua Affiliate. The incident and these accounting errors resulted from a design deficiency in the Company's  controls over the implications of and accounting for significant contracts and transactions for which the Chief Accounting Officer had, without oversight, the sole authority.  In addition, a design deficiency existed as transactions over a specified threshold were not required to be reported to those with oversight of the financial reporting process. Due to the resulting restatement, these deficiencies were determined to be material weaknesses.

The Company's Chief Accounting Officer has been suspended from all accounting and finance responsibilities, pending completion of the investigation, and the Company's legal representative for Nuo Hua was terminated in October 2011.

63.     While the accounting errors related to the sale of the Nuo Hua Affiliate were solely attributed to Defendant B. Li, as AOB's Chief Accounting Officer, he was not removed from the Board.  Rather, Defendant B. Li decided not to stand for re-election to the Board at the Company's annual meeting held on December 28, 2011.  Moreover, the Company never made any filings with the SEC indicating that his employment agreement was terminated.

64.     On the same day, AOB filed with the SEC its 10-Q for the third quarter ended September 30, 2011.  The Third Quarter 2011 10-Q was signed by defendants Liu and Li.  Attached to the Third Quarter 2011 10-Q were SOX certifications of Liu and Li falsely attesting to its accuracy.   While the Company disclosed internal control weaknesses, the disclosure was misleading as it did not fully disclose the Company's internal control weaknesses.

65.     In particular, the Third Quarter 2011 10-Q described the evaluation of

disclosure controls and procedures and stated:

> As of the end of the period covered by this report (the "Evaluation Date"), we carried out an evaluation in accordance with the requirements of applicable U.S. rules. The Company's management, which includes its Chief Executive Officer and Chief Financial Officer, evaluated the effectiveness of the design and operation of our disclosure controls and procedures, as defined in Rule 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), with respect to this Quarterly Report on Form 10-Q before its filing with the SEC. The internal audit group made its evaluation pursuant to Rule 13a-15 under the Exchange Act.

> Based upon our evaluation, our Chief Executive Officer and our Chief Financial Officer concluded that, as of the Evaluation Date, the Company's disclosure controls and procedures were not effective to ensure that information required to be disclosed by us in our Exchange Act reports is recorded, processed, summarized, and reported within the time periods specified in the SEC's rules and forms, and that such information is accumulated and communicated to our Chief Executive Officer and Chief Financial Officer to allow timely decisions regarding required disclosure.

66.     The Third Quarter 2011 10-Q also indicated the material weaknesses

identified by management were supposedly limited to:

- A design deficiency in the Company's controls over the implications of and accounting for significant contracts and transactions for which the Chief Accounting Officer had, without oversight, the sole authority.

- The design deficiency resulting from the lack of a threshold for reporting significant transactions to those responsible for oversight of the financial reporting process.

67.     Consequently, the Third Quarter 2011 10-Q set forth the following

remediation plans:

> In response to the material weaknesses identified above, management commenced to implement the measures described below to remediate the material weaknesses:

> - Management is in the process of revising its policies and procedures relating to the identification of significant transactions that will impact its financial accounting and disclosures. This includes the establishment of a Disclosure Committee consisting of the Chief Executive Office, Chief

Financial Officer, other accounting and operational management as deemed necessary and the Audit Committee financial expert.  The responsibility of the Disclosure Committee is to assist the Company's financial reporting team in ensuring that the accounting consequences of the Company's material transaction are captured and reflected in the Company's financial statements on a timely and accurate manner.

- Management is in the process of establishing a reporting threshold for significant and material transactions to those who are responsible for oversight the financial reporting, particularly to the Audit Committee.

- Management is in the process of designing controls to obtain internal certifications from operational management to ensure all important transactions, contracts and agreements have been appropriately disclosed to the Disclosure Committee.

The material weaknesses identified by management are not remediated as of the date of the filing of this quarterly report on Form 10-Q. The Company has performed additional substantive procedures to ensure that the financial information reflected in this report is supported and the financial statements are fairly presented as of the date of this amended report. The Audit Committee has directed management to develop a detailed plan and timetable for the implementation of the above-referenced remediation measures. In addition, with the oversight of the Audit Committee, management will continue to review and make necessary changes to the overall design of the system of internal controls and the control environment, as well as policies and procedures to improve the overall effectiveness of internal control over financial reporting.

68.    On January 12, 2012, AOB responded to an inquiry from the SEC and disclosed that it had only received approximately $5 million of consideration from the third party buyer of the Nuo Hua Affiliate to date.  The Company failed to disclose the identity of the third party purchaser or the company whose interest AOB is obtaining.

69.    On February 8, 2012, AOB responded to another inquiry from the SEC and disclosed that it still had yet to receive the remaining $17.2 million in cash consideration from the third party buyer of the Nuo Hua Affiliate.  The Company indicated it was negotiating with the third party buyer on an ongoing basis and hoped to receive the

remaining balance prior to the filing of its 2011 10-K.

70.    On the same day, AOB stock closed at $0.86, which is a decline of over 80% from its high of $4.83 during the Relevant Period.  Consequently, AOB's stock price continued in its decline and closed at $0.68 on February 21, 2012. On February 24, 2012, the Company effected a 1 for 2 reverse stock split.

71.    On March 16, 2012, AOB filed a Form 8-K with the SEC indicating that E&Y informed the Audit Committee during their meeting on March 13, 2012 of certain inconsistencies it noted during their audit of the AOB for the year ended December 31, 2011.   As a result, the Audit committee purportedly commenced an independent investigation into the identified inconsistencies immediately and rendered the Company unable to timely file its 2011 10-K.

72.    On the same day, the NYSE halt trading in AOB's stock.

73.    On March 29, 2012, in further response to SEC inquiries, the Company disclosed it finally received full consideration for the sale of its interest in the Nuo Hua Affiliate, approximately eighteen months after consummating the sale.  However, the third party buyer remained unidentified.

74.    On May 9, 2012, Defendant Wizel suddenly resigned from the Board and its Audit Committee, allegedly "due to health reasons", while the purported investigation by the Audit Committee was still ongoing.  Yet, these health reasons did not impede Defendant Wizel from entering into an agreement with AOB six days later to serve as a financial consultant for an undisclosed amount.

75.    On May 29, 2012, following its delisting from the NYSE, the Company's

stock began trading over the counter.  It fell from its last close of $1.52 (after a reverse stock split) to a close of $0.58 per share (after a reverse stock split) for a total drop of $.94 per share or 61.8%.

76.     On June 15, 2012, AOB filed a Form 8-K with the SEC stating it had dismissed E&Y as its auditor.  Since the purported investigation by the Audit Committee had yet to be completed and the inconsistencies previously identified by EY had not been resolved, EY concluded it would no longer rely on AOB's management representations. As a result, the Company's financial statements for years ended December 2009 and 2010 and the unaudited interim financial statements issued for quarters from September 30, 2009 through September 30, 2011 could no longer be relied upon.  Furthermore, EY withdrew its audit opinions on the Company's financial statements and internal controls for years ended 2009 and 2010.  The 8-K stated in relevant part:

> During EY's audit of the Company's December 31, 2011 financial statements, EY identified inconsistencies, which were communicated to the Audit Committee on March 13, 2012, as a result of which an independent investigation was launched. As of the date of EY's dismissal, the investigation was not completed, and EY's concerns over these inconsistencies were not resolved. Consequently, EY concluded that it is unable to rely on management's representations provided in connection with its audits of the financial statements for the years ended December 2009 and 2010, the effectiveness of the Company's internal control over financial reporting as of December 31, 2009 and 2010, and its review of the Company's unaudited interim financial information for the quarters ended September 30, 2009 through September 30, 2011. On June 15, 2012, the Company received a letter from EY in which it withdrew its reports on the financial statements and related internal control over financial reporting for the years ended and as of December 31, 2009 and 2010 and accordingly, its reports issued thereto on March 15, 2010 and 2011 can no longer be relied upon. The inconsistencies EY identified, which were not resolved at the time of its dismissal, and its inability to rely on management's representations leading to the withdrawal of its reports, constitute reportable events as defined in Item 304(a)(1)(v) of Regulation S-K…

On June 15, 2012, the Company received a letter from EY in which EY stated that due to the fact that (i) it had not received the results of the Company's on-going independent investigation (the "Investigation") with respect to inconsistencies identified during EY's audit of the Company's financial statements for the year ended December 31, 2011 and (ii) it would not be able to evaluate the findings of the Investigation due to its dismissal, EY is no longer able to rely on management's representations made to EY in connection with (a) its audits of the financial statements for years ended December 2009 and 2010, (b) its audit of the effectiveness of the Company's internal control over financial reporting as of December 31, 2009 and 2010, and (c) its reviews of the Company's unaudited interim financial statements for the quarters from September 30, 2009 through September 30, 2011. Accordingly, EY withdrew its audit reports previously rendered on the financial statements and related internal control over financial reporting for years ended and as of December 31, 2009 and 2010 and accordingly, those reports can no longer be relied upon. The Company's Audit Committee discussed with EY the matters disclosed in this Item 4.02.

77.     On the same day, the price of AOB stock closed at $.43 per share (after the reverse stock split). In four trading days following the announcement, the Company's stock closed at $0.35 (after the stock split), a decline of 18.6%.

78.     Then, in an effort to restore a semblance of confidence in the Company after dismissing EY as their auditor, the Company replaced EY with Weinberg & Company ("Weinberg"), a small audit firm headquartered in South Florida.  Weinberg also serves as the auditor to the Sino Clean Energy, a Chinese reverse merger fraud.

## VIII.     DAMAGES TO AOB

79.     As a result of the Individual Defendants' improprieties, the Company has incurred and will incur significant costs and expenditures.  The Individual Defendants' fraudulent conduct and improper statements have devastated AOB's credibility as reflected by the Company's over $43.56 million market capitalization decline[2], halt "in

---

[2] This number has been calculated based on the difference between AOB's closing price of $1.52 on March 16, 2012 and the 90-day average closing price of AOB($.41), after the truth of AOB's

trading of the Company's stock, its inability to timely file its Form 10-K, and the dismissal of its independent auditor.

80.    AOB *also* faces damages from securities class actions brought by investors against defendants AOB, Liu, Li, Min, B. Li, Patti, Wang, Brody, Wizel, and Zhang. Among other things, the complaints in the above action allege false and misleading statements and material omissions made by the Individual Defendants concerning the Company's internal audit controls and financial statements.  Accordingly, the Company has and will incur costs in investigating and defending AOB and certain officers and directors in the lawsuits, in addition to potentially hundreds of millions of dollars in settlement or to satisfy an adverse judgment.

81.    Further, as a direct and proximate result of the Individual Defendants' actions, AOB has expended, and will continue to expend, significant sums of money. Such expenditures include, but are not limited to:

(a) fees incurred from the previous auditor who has been dismissed by the Company, and the costs related to hiring a new auditor to re-audit the Company's books;

(b) costs incurred from any potential internal review or internal investigation of the issues discovered by EY pursuant to their audit; and

(c) costs incurred from compensation and benefits paid to the Individual Defendants who have breached their duties to AOB.

82.    Moreover, these actions have irreparably damaged AOB's corporate image and goodwill.  For at least the foreseeable future, AOB will suffer from what is known as

financial reports emerged.

the "liar's discount," a term applied to the stocks of companies who have been implicated in improper behavior and have misled the investing public, such that AOB's ability to raise equity capital or debt on favorable terms in the future is now impaired.

## IX.        DERIVATIVE AND DEMAND REFUSED ALLEGATIONS

83.    Plaintiff brings this action derivatively in the right and for the benefit of AOB to redress injuries suffered, and to be suffered, by AOB as a direct result of breach of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof by the Individual Defendants.   AOB is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

84.    Plaintiff will adequately and fairly represent the interests of AOB in enforcing and prosecuting its rights.

85.    Plaintiff is a shareholder of AOB. Plaintiff was a shareholder at the time of the wrong doing of which he complains and has continuously been a shareholder.

86.     On October 3, 2012, Plaintiff made a demand on the Board to fully investigate and remedy, *inter alia*, breaches of fiduciary duty by certain current and/or former officers, directors and management of the Company (the-"Demand").

87.    To date, the Board has not responded to the Demand, nor has any other representative of the Company or its Board.  However, the Company and its Board have clearly received the Demand as evidenced by the attached letter and certified mail return receipt. *See* Exhibit 1.

88.     In light of the Board's utter and complete failure to investigate Plaintiff's Demand or take any action against the Individual Defendants, the Board has demonstrated that it is unable or unwilling to act in good faith with regard to the claims asserted herein.  The refusal to substantively respond to Plaintiff's Demand and/or enact corrective measures evidences a lack of good faith exercise of the Board's business judgment.

### FIRST CAUSE OF ACTION
### Against the Individual Defendants for Breach of Fiduciary Duty

89.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

90.     The Individual Defendants owed and owe AOB fiduciary obligations. By reason of their fiduciary relationships, the Individual Defendants owed and owe AOB the highest obligation of good faith, fair dealing, loyalty, and due care.

91.     The Individual Defendants of the Company owed AOB the highest duty of loyalty.  These defendants breached their duty of loyalty by engaging in a scheme to inflate and/or inaccurately represent the Company's earnings, revenue, and cash balance figures in order to mislead investors about the true financial health of the Company. Defendants Liu, Li, Min, B. Li, Patti, Wang, Brody, Wizel, and Zhang knowingly or recklessly made and/or allowed the Company to make improper statements concerning: (i) its earnings, revenue, and cash balance figures; ii) the Company's internal audit and disclosure controls.

92.     Defendants Liu, Li, Min, B. Li, Patti, Wang, Brody, Wizel, and Zhang further breached their fiduciary duties by continuously failing to take corrective measures to protect the interests of the Company once apprised of the improprieties discovered during its audit and by delaying the audit process in order to conceal their misconduct by dismissing the auditor.  These defendants' inexplicable dismissal of the auditor and refusal to take the necessary remedial steps forced the Company to delay the filing of its fiscal 2011 annual report.  Accordingly, the Company suffered serious damage resulting from its inability to timely file its annual financial statement, as trading in the Company's stock was effectively halted.

93.     Finally, the Individual Defendants breached their duty of loyalty by failing to implement and maintain an effective system of internal and financial controls.  This failure led to the improper public statements concerning the Company's financial results and allowed the fraudulent practices to continue.  The wrongful conduct was continuous, connected, and was on-going throughout the applicable time period. It resulted in continuous, connected, and on-going harm to the Company.

94.     Defendants Wizel, Patti, Wang and Brody breached their fiduciary duty of loyalty by approving the statements described herein which were made during their tenure on the Audit Committee.  These defendants were responsible for reviewing and overseeing the Company's accounting and financial reporting process and ensuring the integrity of its financial statements. In a complete and utter abdication of their heightened duties under the Audit Committee Charter, defendants Wizel, Patti, Wang and Brody knowingly or recklessly allowed the Company to issue improper statements regarding the

Company's financial results and business operations. Further, defendants Wizel, Patti, Wang and Brody breached their fiduciary duties under the Audit Committee Charter by knowingly or recklessly impeding the progress of the audit, failing to rectify issues raised by EY during its audit of the Company, and making certain representations to EY that forced EY to announce that prior years' financial reports could no longer be relied upon.

95.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, AOB has sustained significant damages, as alleged herein. As a result of the misconduct alleged herein, these defendants are liable to the Company.

96.     Plaintiff, on behalf of AOB, has no adequate remedy at law.

## SECOND CAUSE OF ACTION
### Against the Individual Defendants for Waste of Corporate Assets

97.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

98.     As a result of the widespread illegal acts at the Company, issuing improper statements that had the effect of inflating the Company's earnings and other financial metrics, and by failing to conduct proper supervision and take appropriate and timely corrective measures to remedy the misconduct alleged herein, the Individual Defendants have caused AOB to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty.

99.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

100.     Plaintiff, on behalf of AOB, has no adequate remedy at law

101.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

## THIRD CAUSE OF ACTION
### Against the Individual Defendants for Unjust Enrichment

102.   By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of AOB.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to AOB.

103.   Plaintiff, as a shareholder and representative of AOB, seeks restitution from the Individual Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

104.   Plaintiff, on behalf of AOB, has no adequate remedy at law.

**X.**

**WHEREFORE**, Plaintiff, on behalf of AOB, demands relief and judgment, as follows: **PRAYER FOR RELIEF**

A.   Against all of the defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breach of fiduciary duty, waste of corporate assets, and unjust enrichment;

B.   Directing AOB to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect AOB and its shareholders from a repeat of the damaging events described herein,

including, but not limited to putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote of the following Corporate Governance Policies:

      (i)     a proposal to strengthen the Company's controls over financial reporting;

      (ii)     a proposal to strengthen AOB's oversight of its auditing, accounting, and disclosure procedures;

      (iii)     a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

      (iv)     a provision to permit the shareholders of AOB to nominate at least three candidates for election to the Board; and

      (v)     a proposal to strengthen the Board's supervision of the accuracy and authenticity of the Company's financial records and bank confirmations;

C.     Extraordinary equitable and/or injunctive relief as permitted by law and equity, sued hereunder, including attaching, impounding, imposing a constructive trust on, or otherwise restricting the proceeds of the Individual Defendants' trading activities or their other assets so as to assure that plaintiff on behalf of AOB has an effective remedy;

D.      Awarding to AOB restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the defendants;

E.      Awarding to plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.      Granting such other and further relief as the Court deems just and proper.

## XI.   **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: December 6, 2012                    Respectfully submitted,

                                          **THE ROSEN LAW FIRM, P.A.**

                                          By:_____
                                          Laurence Rosen, Esq.
                                          236 Tillou Road
                                          South Orange, NJ 07079
                                          Telephone: (973) 313-1887
                                          Fax: (973) 833-0399
                                          lrosen@rosenlegal.com

                                          Counsel for Plaintiff

<u>VERIFICATION</u>

I, David Bravetti, am the plaintiff in the within action and am a citizen of the State of New Jersey. I have read the foregoing complaint and know the contents thereof. The allegations of the complaint are true of my personal knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this __5__, of December 2012.

_____
David Bravetti

# EXHIBIT 1



**The Rosen Law Firm**
**I N V E S T O R   C O U N S E L**

Phillip Kim, Esq.
pkim@rosenlegal.com

October 3, 2012

**VIA CERTIFIED MAIL**

Tony Liu
American Oriental Bioengineering, Inc.
Chairman of the Board of Directors
c/o  L& R Service Company of Nevada, LLC- Las Vegas
3993 Howard Hughes Parkway, Ste 600
Las Vegas, NV 89169

Re:     Shareholder Demand on the Board of American Oriental Bioengineering, Inc.

Dear Mr. Liu:

This firm represents David Bravetti a holder of common stock of American Oriental Bioengineering, Inc. ("AOB" or the "Company"). I write on behalf of our client to demand that the members of the Board of Directors of AOB (the "Board") take action to remedy breaches of fiduciary duties by certain current and/or former executive officers and directors of the Company, (the "Individuals"), including but not limited to the following: Yanchun Li, Binsheng Li, Lawrence Wizel, Cosimo Patti, Xianmin Wang, Eileen Brody, and yourself.

As you are aware, by reason of their positions as officers and/or directors of AOB and because of their ability to control the business and corporate affairs of AOB, the Individuals owe AOB and its shareholders the fiduciary obligations of good faith, loyalty, and due care and are required to use their utmost ability to control and manage AOB in a fair, just, honest and equitable manner. Our client believes that the Individuals violated these fundamental fiduciary duty principles by failing to maintain and effectuate necessary internal control such as to ensure accurate financial disclosures.

Specifically, on March 13, 2012, the Company's independent registered public accounting firm, Ernst and Young Hua Ming ("EY"), informed the audit committee of certain inconsistencies noted during the performance of their audit for the year ended December 31, 2011. The Company's management and audit committee agreed that the audit committee would immediately commence an independent investigation (the "Investigation") into the matters identified by EY.

On June 15, 2012, AOB dismissed EY as its independent registered public accounting firm after the Company received a letter from EY that stated that (i) EY had not received the results of the Company's on-going independent investigation with respect to inconsistencies identified during EY's audit of the Company's financial statements for the year ending December 31, 2011, that (ii) EY would not be able to evaluate the findings of the Investigation due to its dismissal and would no longer be able to rely on management's representations made to EY in connection with

1

(a) its audits of the financial statements for years ended December 2009 and 2010, (b) its audit of the effectiveness of the Company's internal control over financial reporting as of December 31, 2009 and 2010, and (c) its reviews of the Company's unaudited interim financial statements for the quarters from September 30, 2009 through September 30, 2011.

Accordingly, EY withdrew its audit reports previously rendered on the financial statements and related internal control over financial reporting for years ended and as of December 31, 2009 and 2010. These allegations suggest that the Board failed to establish and maintain an effective system of internal and financial controls for the Company. These facts also suggest that certain Individuals were not cooperating with EY.

The Company replaced EY with Weinberg & Company P.A. ("Weinberg") – a small audit firm with four partners. Weinberg has served as auditor for other notorious Chinese frauds, such as Sinoclean Energy.

To date, the Company has filed no reports with the SEC, nor have there been any press releases or updates regarding the filing of the Company's Annual Report for the 2011 fiscal year or the purported Investigation. The Company's stock has been delisted from the NYSE and the market value of the Company's stock has fallen nearly 90% from its highs---causing great harm to the Company and its ability to tap the capital markets to continue and/or expand its business.

Based on the foregoing, we demand that the Board appoint an independent committee to commence a reasonable and good faith investigation of: (i) the amount of damages sustained by the Company as a result of the Individuals' breaches of fiduciary duties alleged herein; and (ii) all bonuses, restricted stock, stock options, and other incentive compensation paid to those Individuals. We also demand that, should such a remedy be appropriate, the Board immediately proceed with a civil action against the Individuals and recover for the benefit of the Company any and all appropriate relief. Such action would be in the best interests of the Company. We are willing to participate in and assist the Company with the appointment of an independent committee and its investigation of these matters.

If, after receipt of this letter, the Board has not commenced a reasonable and good faith investigation as demanded within sixty (60) days, we will seek to file a derivative action. A timely response from the Board confirming that they have instituted a reasonable and good faith investigation would be appreciated.

Sincerely,

Phillip Kim, Esq.

cc:     American Oriental Bioengineering
        211 Warren Street, Suite 219
        Newark, New Jersey 07103