Daniel J. Tyukody (*pro hac vice application pending*)
Justin H. Iwata (*pro hac vice application pending*)
**GOODWIN PROCTER, LLP**
601 S. Figueroa Street, 41st. Floor
Los Angeles, CA  90017-5704
Tel.:   1.213.426.2500
Fax:   1.213.623.1673
*dtyukody@goodwinprocter.com*
*jiwata@goodwinprocter.com*

Katherine D. Seib
**GOODWIN PROCTER LLP**
The New York Times Building
620 Eighth Avenue
New York, NY  10018-1405
Tel.:   (212) 813-8800
Fax:   (212) 355-3333
*kseib@goodwinprocter.com*

*Attorneys for Defendants LAWRENCE WIZEL,
COSIMO PATTI and EILEEN BRODY*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DAVID BRAVETTI, Derivatively, on behalf of AMERICAN ORIENTAL BIOENGINEERING, INC., <br><br> Plaintiff, <br><br> v. <br><br> TONY LIU, YANCHUN LI, BINSHENG LI, JUN MIN, LAWRENCE WIZEL, COSIMO PATTI, XIANMIN WANG, BAIQING ZHANG AND EILEEN BRODY, <br><br> Defendants, <br><br> and <br><br> AMERICAN ORIENTAL BIOENGINEERING, INC., a Nevada Corporation, <br><br> Nominal Defendant. | Case No. 2:12-CV-07492-MAS-TJB <br><br><br> **U.S. OUTSIDE DIRECTORS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   BACKGROUND ....................................................................................6

III.  THIS ACTION SHOULD BE STAYED .............................................10

    A.    This Action Should Be Stayed Pending A Final Resolution Of
          The Securities Class Action ...............................................................10

    B.    This Action Should Be Further Stayed Pending A Final
          Resolution Of The Nevada Derivative Action ...................................15

IV.   IN THE ALTERNATIVE THIS ACTION SHOULD BE
      DISMISSED .........................................................................................20

    A.    Plaintiff Has Failed To Plead Standing .............................................20

          1.    Plaintiff Has Failed To Plead The Date He Purchased His
               Stock And Has Provided No Evidence Of Stock
               Ownership ...............................................................................20

          2.    Plaintiff Has Made A Demand, And Therefore Lacks
               Standing In The Absence Of A Wrongful Refusal ..................24

    B.    The Complaint Fails To State A Claim ...............................................27

          1.    Plaintiffs' Claims For Breach Of Fiduciary Duty Are
               Subject To A Heightened Pleading Standard ...........................27

          2.    AOB's Articles Of Incorporation Bar Director And
               Officer Liability For Anything Other Than Intentional
               Misconduct, Fraud, Or A Knowing Violation of Law..............29

          3.    The Complaint Fails To State A Claim For Breach Of
               Fiduciary Duty Based On The Issuance Of False
               Statements ...............................................................................31

               (a)    The Complaint Fails To Adequately Allege That

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

The Individual Defendants Knew The
Representations Were False.............................................31

(b)     The Complaint Fails To Adequately Allege Any
Harm To AOB ................................................................34

4.     The Complaint Fails To State A Claim For Waste..................37

5.     The Complaint Fails To State A Claim For Unjust
Enrichment .............................................................................38

V.     CONCLUSION...............................................................................39

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aetna Cas. & Sur. Co. v. Aztec Plumbing Corp.*,
    796 P.2d 227 (Nev. 1990)......................................................................35

*Ash v. Alexander*,
    2000 WL 20704 (S.D.N.Y. Jan. 12, 2000) ....................................16, 18

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................21

*Breault v. Folino*,
    2002 WL 31974381 (C.D. Cal. Mar. 15, 2002)............................12, 13

*Brehm v. Eisner*,
    746 A.2d 244 (Del. 2000) ......................................................................37

*Brendle v. Smith*,
    46 F. Supp. 522 (S.D.N.Y. 1942) .........................................................12

*Brenner v. Albrecht*,
    2012 WL 252286 (Del. Ch. Jan. 27, 2012)............................12, 14, 15

*Brignand v. Van Wagoner Funds, Inc.*,
    2009 WL 2175623 (D. Nev. July 16, 2009) .........................................33

*Brudno v. Wise*,
    2003 WL 1874750 (Del. Ch. Apr. 1, 2003)............................12, 13, 14

*Bushansky v. Armacost*,
    2012 WL 3276937 (N.D. Cal. Aug. 9, 2012) .......................................18

*Cal. Pub. Emps' Ret. Sys. v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004) ...........................................................27, 28

*Campbell v. Weihe Yu*,
    2014 WL 2599856 (S.D.N.Y. June 10, 2014) .......................................5

*Clark v. Lacy*,
    376 F.3d 682 (7th Cir. 2004) .............................................15, 18, 19

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

*Colorado River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976).....................................................................................*passim*

*Commonwealth Ins. Co. v. Underwriters, Inc.*,
    846 F.2d 196 (3d Cir. 1988) ...............................................................10

*Crete v. Resort Condos. Int'l, LLC*,
    2011 WL 666039 (D.N.J. Feb. 14, 2011) ............................................28

*Cucci v. Edwards*,
    2007 WL 3396234 (C.D. Cal. Oct. 31, 2007) ...............................12, 13

*Daisy Sys. Corp. v. Finegold*,
    1988 WL 166235 (N.D. Cal. Sept. 19, 1988) ......................................35

*Dollens v. Zionts*,
    2002 WL 1632261 (N.D. Ill. July 22, 2002) ......................................35

*Drobner v. Bruce*,
    531 F. App'x 96 (2d Cir. 2013) ..........................................................30

*Falkenberg v. Baldwin*,
    1977 WL 1025 (S.D.N.Y. June 13, 1977) ..........................................35

*Fosbre v. Matthews*,
    2010 WL 2696615 (D. Nev. July 6, 2010) ........................................30

*Freuler v. Parker*,
    803 F. Supp. 2d 630 (S.D. Tex. June 30, 2011) .................................39

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*,
    460 F. Supp. 2d 1246 (D. Nev. 2006)................................................38

*Gallup v. Caldwell*,
    120 F.2d 90 (3d Cir. 1941) .................................................................22

*Giles v. ICG, Inc.*,
    789 F. Supp. 2d 706 (S.D.W.V. 2011) ...............................................18

*Guerrino v. Ohio Cas. Ins. Co.*,
    423 F.2d 419 (3d Cir. 1970) ...............................................................22

*Hilton Hotels Corp. v. ITT Corp.*,
   978 F. Supp. 1342 (D. Nev. 1997)......................................................................25

*In re Accuray, Inc. S'holder Derivative Litig.*,
   757 F. Supp. 2d 919 (N.D. Cal. 2010).........................................................28, 39

*In re Amerco Derivative Litig.*,
   252 P.3d 681 (Nev. 2011).............................................................................27, 28

*In re Capital One Derivative S'holder Litig.*,
   952 F. Supp. 2d 770 (E.D. Va. 2013) ...............................................................22

*In re Caremark Int'l Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch. 1996) .....................................................................32, 33

*In re Computer Scis. Corp. Derivative Litig.*,
   2007 WL 1321715 (C.D. Cal. Mar. 26, 2007)...................................................21

*In re Computer Scis. Corp. Derivative Litig.*,
   244 F.R.D. 580 (C.D. Cal. 2007).......................................................................22

*In re Cray Inc.*,
   431 F. Supp. 2d 1114 (W.D. Wash. 2006) ........................................................36

*In re Dataproducts Corp. S'holders Litig.*,
   1991 WL 165301 (Del. Ch. Aug. 22, 1991) ......................................................32

*In re First Solar Derivative Litig.*,
   2012 WL 6570914 (D. Ariz. Dec. 17, 2012)................................................12, 13

*In re Groupon Derivative Litig.*,
   882 F. Supp. 2d 1043 (N.D. Ill. 2012).........................................................11, 13

*In re Impax Labs., Inc. Sec. Litig.*,
   2007 WL 5076983 (N.D. Cal. Jan. 3, 2007).......................................................8

*In re Isolagen Inc. Sec. & Derivative Litig.*,
   2007 WL 1101278 (E.D. Pa. Apr. 10, 2007)................................................34, 36

*In re RINO Int'l Corp. Derivative Litig.*,
   2011 WL 5245426 (D. Nev. Nov. 2, 2011).................................................21, 23

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

*In re Smith & Wesson Holding Corp. Derivative Litig.*,
  743 F.Supp. 2d 14 (D. Mass. 2010) .......................................................24, 25, 27

*In re STEC, Inc. Derivative Litig.*,
  2012 WL 8978155 (C.D. Cal. Jan. 11, 2012) ..............................................*passim*

*In re Symbol Techs. Sec. Litig.*,
  762 F. Supp. 510 (E.D.N.Y. 1991) ...............................................................35, 36

*In re United Telecomms., Inc., Sec. Litig.*,
  1993 WL 100202 (D. Kan. Mar. 4, 1993) ....................................................35, 36

*In re Verisign, Inc., Derivative Litig.*,
  531 F. Supp. 2d 1173 (N.D. Cal. 2007) ..............................................................23

*In re Wal-Mart Stores, Inc. S'holder Derivative Litig.*,
  2012 WL 5935340 (W.D. Ark. Nov. 27, 2012)...........................................16, 18

*In re Walt Disney Co. Derivative Litig.*,
  731 A.2d 342 (Del. Ch. 1998) .............................................................................38

*Israni v. Bittman*,
  473 F. App'x 548 (9th Cir. 2012) ........................................................................30

*Lewis v. Chrysler Corp.*,
  949 F.2d 644 (3d Cir. 1991) ................................................................................29

*Lloyd v. Carney*,
  2011 WL 11799981 (D.N.J. Aug. 5, 2011) ................................................2, 3, 11

*Lorentzen v. Levolor Corp.*,
  754 F. Supp. 987 (S.D.N.Y. 1990) ......................................................................18

*Maccoumber v. Austin*,
  2004 WL 1745751 (N.D. Ill. Aug. 2, 2004) .......................................................26

*Malone v. Brincat*,
  722 A.2d 5 (Del. 1998) ........................................................................................31

*Metro Commc'ns Corp. BVI v. Advanced Mobilecomm Techs. Inc.*,
  854 A.2d 121 (Del. Ch. 2004) .............................................................................31

*Moradi v. Adelson*,
2014 WL 1413627 (D. Nev. Apr. 11, 2014)......................................3, 16, 17, 19

*Morefield v. Bailey*,
959 F. Supp. 2d 887 (E.D. Va. 2013) ...........................................................*passim*

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
954 A.2d 911 (Del. Ch. 2008) ...............................................................................20

*Penn. ex. rel. Zimmerman v. Pepsico, Inc.*,
836 F.2d 173 (3d Cir.1988) ...................................................................................23

*Pinnacle Ins. Solutions, LLC v. Kolbe*,
2014 WL 1272212 (D.N.J. Mar. 27, 2014) ....................................................15, 16

*Piven v. Ryan*,
2006 WL 756043 (N.D. Ill. Mar. 23, 2006) .........................................................26

*Rapaport v. Soffer*,
*2012 WL 2522069 (D. Nev. June 29, 2012)* ........................................................28

*Rediker v. Geon Indus., Inc.*,
464 F. Supp. 73 (S.D.N.Y. 1978) ..........................................................................37

*Renfro v. FDIC*,
773 F.2d 657 (5th Cir. 1985) .................................................................................27

*Richelson v. Yost*,
738 F. Supp. 2d 589 (E.D. Pa. 2010).....................................................................20

*Roll v. Singh*,
2008 WL 3413863 (D.N.J. June 26, 2008).............................................................27

*Rosenblum v. Sharer*,
2008 WL 9396534 (C.D. Cal. July 28, 2008)...................................................12, 13

*Sargent v. Genesco, Inc.*,
492 F.2d 750 (5th Cir. 1974) .................................................................................37

*Shallal v. Elson*,
1999 WL 33957906 (S.D. Fla. Apr. 12, 1999)................................................16, 17

*Shenk v. Karmazin*,
 867 F. Supp. 2d 379 (S.D.N.Y. 2011) ...........................................................37, 38

*Shoen v. SAC Holding Corp.*,
 137 P.3d 1171 (Nev. 2006).................................................................24, 25, 29

*Smith v. Stevens*,
 957 F. Supp. 2d 466 (S.D.N.Y. 2013) ...............................................................21

*Sokolowski v. Adelson*,
 2014 WL 3748191 (D. Nev. July 30, 2014) ..................................................4, 20

*Spiegel v. Buntrock*,
 571 A.2d 767 (Del. 1990) .......................................................................4, 24, 25

*Sprando v. Hart*,
 2011 WL 3055242 (D. Nev. July 22, 2011) ................................................22, 26

*Stalk v. Mushkin*,
 199 P.3d 838 (Nev. 2009).................................................................................34

*Steiner v. Meyerson*,
 1995 WL 441999 (Del. Ch. July 19, 1995) ................................................37, 38

*Stone v. Ritter*,
 911 A.2d 362 (Del. 2006) .................................................................................33

*Strickland v. Hongjun*,
 2011 WL 2671895 (S.D.N.Y. July 8, 2011).......................................................30

*Taylor v. Campanelli*,
 2014 WL 2931816 (E.D. Mich. June 30, 2014) .....................................16, 17, 18

*Walker v. Zenk*,
 2008 WL 351250 (M.D. Pa. 2008) ....................................................................39

*Weiss v. Amkor Tech., Inc.*,
 527 F. Supp. 2d 938 (D. Ariz. 2007) ..................................................................8

*York Linings v. Roach*,
 1999 WL 608850 (Del. Ch. July 28, 1999) ........................................................32

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

*Zupnick v. Goizueta*,
     698 A.2d 384 (Del. Ch. 1997) ............................................................................38

**STATUTES AND RULES**

15 U.S.C. § 78j-1(b) ....................................................................................... 9

Securities Exchange Act of 1934 .................................................................1, 10, 32

     § 10(b) ..........................................................................................1, 10, 32

     § 20(a) ..........................................................................................1, 10, 32

Nev. Rev. Stat. § 78.138(3) ...........................................................................28

Nev. Rev. Stat. § 78.138(7) ......................................................................5, 29, 30

17 C.F.R. § 229.304(a)(1)(iv) ......................................................................... 9

Fed. R. Civ. P. 9(b) ..................................................................................27, 28

Fed. R. Civ. P. 23.1 .................................................................................*passim*

Nev. R. Civ. P. 23.1 .................................................................................4, 20

**OTHER AUTHORITIES**

7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal
     Practice and Procedure* § 1828 ........................................................................22

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

Defendants Cosimo Patti, Lawrence Wizel, and Eileen Brody (the "U.S. Outside Directors") move to stay this putative shareholder derivative action filed on behalf of nominal defendant American Oriental Bioengineering, Inc. ("AOB" or the "Company"), and alternatively move to dismiss Plaintiff's Verified Shareholder Derivative Complaint (the "Complaint").[1]

## I.   <u>INTRODUCTION</u>

This action is a "tag along" derivative case that copies its underlying allegations from a securities class action pending in the Central District of California alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Securities Class Action").[2] This case is also virtually identical to an earlier-filed shareholder derivative action pending in state court in Nevada, AOB's state of incorporation (the "Nevada Derivative Action").[3] This

---

[1] AOB is a mainland China based company that specializes in the development, manufacture and commercialization of a broad range of pharmaceutical and healthcare products.  ¶ 2.  (Unless otherwise noted, all ¶¶ __ references are to Plaintiff's Complaint.)  Its Board at the time of Plaintiff's demand and at the time of suit consisted of six members.  This motion is filed on behalf of all U.S. Outside Directors who served on AOB's Board period during the alleged Relevant Period. *See infra* at 6-7, n.8.  Mr. Patti is the only U.S. Outside Director who was a member of the Board at the time demand was made and at the time the Complaint was filed, and is the only U.S. Outside Director who is currently a director of the Company.

[2] *See* Declaration of Katherine D. Seib ("Seib Decl."), Ex. A (Class Action Complaint in *McGee v. AOB*, No. 12-5476 (C.D. Cal. filed June 22, 2012) ("Securities Complaint" or "Sec. Compl.")).

[3] *See* Seib Decl., Ex. D (Verified Shareholder Derivative Complaint filed in *Barbato v. Liu*, No. 12-2480 (Nevada District Court for Washoe County filed Oct.

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

action should be stayed until both the Securities Class Action and the Nevada

Derivative Action are resolved.

Both this action and the Nevada Derivative Action allege (i) that current and

former directors and officers of AOB (the "Individual Defendants") breached their

fiduciary duties by "allowing" AOB to issue the allegedly false and misleading

statements that are the subject of the Securities Class Action, and (ii) that the

Individual Defendants thereby caused AOB to incur "millions" of dollars of

liabilities related to the alleged securities fraud.[4]  Despite multiple pleading

attempts over the course of two years, however, the plaintiffs in the Securities

Class Action have not yet been able to plead a viable complaint.  Defendants'

motions to dismiss plaintiffs' *fourth* amended complaint are fully briefed and

awaiting a decision from the Hon. Fernando M. Olguin.

Plaintiff's case, therefore, presents a classic "cart-before-the-horse"

scenario, because the Complaint assumes the existence of liability in another action

that has not even been adequately pled, let alone proven.  Many courts, including

this one, have stayed derivative actions in such circumstances, at least until the

related securities class action survives a motion to dismiss, and often until the

securities class action is completely resolved.  *See, e.g.*, *Lloyd v. Carney*, 2011 WL

11799981, at *1-2 (D.N.J. Aug. 5, 2011) (staying derivative action until related

---

1, 2002) ("Nevada Derivative Complaint" or "Nev. Deriv. Compl.")).

[4] *See* ¶¶ 1, 36; RJN, Ex. D (Nev. Deriv. Compl. ¶¶ 1, 68).

securities class action is dismissed with prejudice or defendants in securities class action are required to file an answer); *In re STEC, Inc. Derivative Litig.*, 2012 WL 8978155, at *9 (C.D. Cal. Jan. 11, 2012) (staying derivative action until resolution of related securities class action).  Indeed, the plaintiff in the Nevada Derivative Action has agreed to stay his action until the Securities Class Action survives a motion to dismiss or is dismissed with prejudice—similar to the stay ordered by this Court in *Lloyd*—but this Plaintiff has refused to agree to such a stay.[5]

Even if the court in the Central District allows the Securities Class Action to proceed, this action should still be stayed in deference to the Nevada Derivative Action pursuant to the abstention doctrine enunciated in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).  *See, e.g.*, *Moradi v. Adelson*, 2014 WL 1413627, at *6 (D. Nev. Apr. 11, 2014) (staying federal derivative action in favor of parallel derivative action pending in Nevada state court pursuant to *Colorado River*).

If the Court declines to stay this action, it should dismiss the Complaint based on Plaintiff's failure to plead both standing and the substantive elements of the underlying claims.  The defect in Plaintiff's standing is two-fold.  First, in order for a plaintiff to have standing to bring a derivative action on behalf of a corporation, the plaintiff must own stock in the corporation both at the time of the

---

[5] *See* Seib Decl., Exs. E, F & K.

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

alleged wrongdoing and continuously throughout the pendency of the derivative

action.  *See* Fed. R. Civ. P. 23.1; Nev. R. Civ. P. 23.1; *see also infra* at 19-20.

Federal courts interpreting these requirements in derivative actions brought on

behalf of Nevada corporations have required plaintiffs to plead the *specific dates*

that they purchased their shares and rejected as insufficient general allegations—

like those offered by Plaintiff here—that plaintiffs have held shares "at the time of

the wrongdoing."  ¶ 15.  *See, e.g.*, *Sokolowski v. Adelson*, 2014 WL 3748191, at *3

(D. Nev. July 30, 2014) (dismissing derivative action because plaintiff must

"precisely indicate the stock acquisition date in the complaint"; allegation that

plaintiff "owned common stock . . . during the period of the wrongdoing" was

insufficient).

   Second, because Plaintiff made a demand on AOB's Board to act on his

allegations, he conceded the Board's ability to investigate and act on his demand in

an unbiased manner, and he therefore lacks standing to file a derivative suit in the

absence of the Board's wrongful refusal of the demand.  As the Delaware Supreme

Court explained in the seminal case, *Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del.

1990), "A shareholder who makes a demand can no longer argue that demand is

excused."[6]  Therefore, "once a demand has been made, ***absent a wrongful refusal***,

---

[6]  Nevada courts generally follow Delaware courts on issues of corporate law,
particularly with respect to the demand requirement.  *See infra* at 24-25 & n.29.

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

the stockholders' ability to initiate a derivative suit is ***terminated***." *Id.*[7] Here,

there has been no wrongful refusal of Plaintiff's demand, and, indeed, no refusal at

all.  Instead, the Board informed Plaintiff that it would consider Plaintiff's demand

and take action with respect to the demand at an appropriate time.  *See infra* at 26.

Until the securities class action is resolved, it would not be appropriate—indeed, as

numerous courts have recognized, it would be contrary to the Company's best

interests—for the Board to act on Plaintiff's demand.  *See infra* at 12-14, 26.

Therefore, unless and until the Board actually refuses—and wrongfully refuses—to

act on Plaintiff's demand, Plaintiff simply lacks standing to sue.

Putting aside the threshold issue of Plaintiff's lack of standing, Plaintiff's

pleading is also substantively deficient and fails to state a claim for breach of

fiduciary duty, waste or unjust enrichment under Nevada law.  Nevada has a broad

statute—even broader than Delaware's—limiting the liability of directors and

officers only to intentional misconduct that constitutes a breach of the duty of

loyalty.  *See* Nev. Rev. Stat. § 78.138(7).  AOB's Articles of Incorporation adopt

this statutory protection for directors and officers to the fullest extent permitted

under Nevada law.  *See infra* at 29 n.36.  Allegations of breaches of the duty of

care, therefore, fail to state a non-exculpated claim, even if they allege gross

negligence.  *See, e.g.*, *Campbell v. Weihe Yu*, 2014 WL 2599856, at \*4 (S.D.N.Y.

---

[7]  Throughout this brief, all emphasis is added and internal citations, quotation
marks, brackets and ellipses have been omitted unless otherwise noted.

June 10, 2014) (under Nevada law, "plaintiffs must plead particularized facts that, if true, would demonstrate that the directors acted with scienter, *i.e.,* that they had actual or constructive knowledge that their conduct was legally improper.").  Here, notwithstanding Plaintiff's conclusory allegations of breaches of the duty of loyalty (*e.g.*, ¶¶ 91, 93-94), Plaintiff has not pled any particularized facts demonstrating intentional misconduct, and therefore fails to state a non-exculpated claim.

Finally, Plaintiff fails to state a cognizable claim for damages.  Plaintiff's assertion that the Individual Defendants caused the Company to incur liability in the securities class action is premature, because no such liability has attached.  *See infra* at 34-35.  Similarly, Plaintiff's allegations that damage was suffered in the form of investigation and defense costs, reputational harm, and decreased market capitalization all fail to state a claim.  *See infra* at 35-37.

## II.   <u>BACKGROUND</u>

This derivative case was filed roughly six months after the original complaint in the Securities Class Action was filed in the Central District of California, and largely copies the allegations in that complaint, including its alleged class period.[8]  In the more than two years that the Securities Plaintiffs have

---

[8]  The original complaint in the Securities Class Action (filed June 22, 2012) asserted a class period of November 16, 2009 to June 15, 2012, *i.e.*, from AOB's filing of its Form 10-Q for the third quarter of 2009 ("3Q09") results on November

been attempting to state a claim, their theories have changed over time, including their choice of a new starting date for the alleged class period (now said to begin on September 27, 2010), but in essence both the Securities Class Action and this derivative case are founded upon two discrete and unrelated events.

The first involved AOB's sale of its minority interest in an affiliate—the Nuo Hua Affiliate ("NHA")—to a Chinese-government controlled state entity (the "Nuo Hua Transaction" or "Transaction"). The contract for the sale of NHA was signed on September 27, 2010 and called for AOB to be paid $38.6 million, consisting of $22.5 million in cash, and $16.1 million in equity in another company owned by the state. ¶ 48. Under Generally Accepted Accounting Principles ("GAAP") applicable in the United States, AOB should have recorded the Transaction on the date the contract was signed,[9] but as the Complaint acknowledges, AOB did not receive "full consideration for the sale of its interest in the Nuo Hua Affiliate [until] approximately eighteen months after consummating the sale." ¶ 73. AOB's internal accounting group made the erroneous (under U.S. GAAP), but not inherently unreasonable decision to record the Transaction when the state-owned enterprise actually paid AOB the consideration due. When this

16, 2009, to its announcement that it dismissed its auditor Ernst & Young LLP ("EY") on June 15, 2012. Seib Decl., Ex. A (Sec. Compl. ¶ 19). The Plaintiff here alleges an identical "Relevant Period" based upon the same events. ¶ 4.

[9] It is the date of this contract—September 27, 2010—that forms the start of the class period in the Fourth Amended Complaint ("FAC") in the Securities Class Action. *See* Seib Decl., Ex. C (FAC ¶¶ 1, 8).

was discovered by EY, the Company and the Audit Committee, with the assistance of outside legal counsel investigated and determined that the Chief Accounting Officer did not provide adequate disclosures about the Transaction and received falsified documentation from the legal representative for the Nuo Hua Affiliate regarding the Transaction.  ¶ 62 (referencing from AOB's Form 10-K/A for 2010).

As a result, AOB restated its accounting for the Nuo Hua Transaction, but its effect was largely a reclassification of various accounting categories across reporting periods, and the market reaction to the announcement of the restated results was actually positive.  AOB's restated results were released on November 14, 2001, following which the stock price rose for the next two days.[10]  For a securities class action case, such a stock price pattern strongly suggests the absence of loss causation.[11]  The lack of a negative market reaction makes sense given that the Nuo Hua Transaction was a $38.6 million transaction (¶ 48) at a time when AOB had approximately $611 million in assets, and the restatement resulted in a mere $1.3 million negative adjustment to AOB's total assets.[12]

---

[10]  AOB's stock price closed at $0.75 on November 14, 2011, the day the Form 10-K/A was issued after the market close.  AOB's stock price closed at $0.81 and at $0.83 the following two days.  The price did not drop below $0.75 until November 21, 2011, a week after the issuance of the restatement.  *See* Seib Decl., Ex. I.

[11]  *See, e.g.*, *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 947 (D. Ariz. 2007) (no loss causation where stock price increased following restatement); *In re Impax Labs., Inc. Sec. Litig.*, 2007 WL 5076983, at *6 (N.D. Cal. Jan. 3, 2007) (same).

[12]  *See* Seib Decl., Ex. G (2010 Form 10-K/A at F-18).  Even on an income basis, the restatement was barely material, as "Comprehensive Income" for 2010 fell

The second event alleged in the two complaints is AOB's termination of EY on June 15, 2012, following EY raising the issue of "inconsistencies" which were under the investigation of the Audit Committee at the time of EY's dismissal.  ¶ 76; *Sec. Compl.* ¶ 50.[13]  There is no allegation in either complaint that these inconsistencies had anything to do with the Nuo Hua Transaction.  And there is no evidence that EY or anyone else thought these inconsistencies had anything to do with fraud.  Neither EY nor the Company said there were any accounting disagreements that led to EY's termination, as would have been required by law were that the case.[14]  Significantly, in connection with both the Nuo Hua Transaction and the inconsistencies, AOB's Audit Committee conducted investigations and took corrective action where necessary.  For example, when the Audit Committee discovered the accounting issue related to the Nuo Hua Transaction, it promptly investigated the matter with outside legal counsel, restated the Company's financial results, and suspended the Chief Accounting Officer from

---

from $32.4 million to $30 million after the restatement.  *Id.*

[13] June 15, 2012 marks the end of the current alleged class period in the Securities Class Action as well as the end of the "Relevant Period" in Plaintiff's Complaint. *See* ¶ 4; Seib Decl., Ex. C (FAC ¶ 1).

[14] *See* 17 C.F.R. § 229.304(a)(1)(iv) (Item 304 to SEC Regulation S-K) (registrant must state whether any disagreements with former accountant preceded resignation or termination); 15 U.S.C. § 78j-1(b) (accountant must report to audit committee, board of directors and ultimately the SEC if it detects an illegal act that has a material effect on the financial statements of the issuer, and the board fails to take timely and appropriate remedial action).

all accounting and finance responsibilities, and the Audit Committee similarly conducted an investigation of the inconsistencies.  *See* ¶¶ 62, 71.

The Central District has yet to rule upon defendants' motions to dismiss the Fourth Amended Complaint, which raise a number of grounds for dismissal, including a lack of adequate pleading of misstatements and scienter with the particularity required under the Private Securities Litigation Reform Act, an inadequate pleading of loss causation, and an inadequate pleading of control person liability.  The Central District, however, did dismiss the First Amended Complaint.  *See* Seib Decl., Ex. B.  Moreover, plaintiffs elected to amend their Second Amended Complaint before defendants even filed motions to dismiss, and then amended their Third Amended Complaint before the Central District had an opportunity to rule on defendants' then-pending motions to dismiss that complaint. Among other amendments, plaintiffs voluntarily dropped all Section 10(b) claims against the U.S. Outside Directors and now plead only Section 20(a) control person claims against those defendants, in an acknowledgment that there are no facts suggesting the U.S. Outside Directors acted with scienter.

## III.   THIS ACTION SHOULD BE STAYED

### A.   This Action Should Be Stayed Pending A Final Resolution Of The Securities Class Action

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket.'"  *Commonwealth*

*Ins. Co. v. Underwriters, Inc.*, 846 F.2d 196, 199 (3d Cir. 1988) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  "In determining whether or not to grant a stay, a court will consider:  the hardship to the moving party should the case proceed; the potential prejudice to the non-moving party; whether the actions involve same or similar parties; the similarity of issues; and judicial economy."  *Lloyd*, 2011 WL 11799981, at *1.  All of those factors support a stay here.

First, the underlying factual allegations of the Complaint are not only "similar" to, but virtually identical to those in Securities Class Action,[15] and alleged liability in this action is based in substantial part on the alleged existence of liability in the Securities Class Action.  *See* ¶¶ 91-94.  "Courts that have considered the interplay between derivative and securities actions have often found that derivative claims cannot be adjudicated in full (or even in large measure) until the securities class action is tried."  *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1048 (N.D. Ill. 2012).  As a result, when a derivative claim is based on the same underlying factual allegations as a securities class action, "considerations of judicial economy weigh heavily in favor of granting [a] temporary stay."  *Lloyd*, 2011 WL 11799981, at *1.[16]  Federal courts, therefore, routinely stay derivative

---

[15] *Compare, e.g.*, ¶¶ 45-47, 53, 56, 59 *with* Seib Decl., Ex. A (Sec. Compl. ¶¶ 22-30, 34-42).

[16] The circumstances in *Lloyd* are similar to those here.  In *Lloyd*, a federal securities class action was followed by multiple derivative suits in state and federal court based on the same factual allegations.  While most of the derivative plaintiffs

actions in deference to related securities class actions.  *See, e.g.*, *Rosenblum v. Sharer*, 2008 WL 9396534, at *8 (C.D. Cal. July 28, 2008) ("[S]taying the derivative action would preserve judicial resources, since the allegations, issues and parties in the two lawsuits substantially overlap.").[17]  So have a number of state courts, including the Delaware Court of Chancery.  *See, e.g.*, *Brenner v. Albrecht*, 2012 WL 252286, at *5-6 (Del. Ch. Jan. 27, 2012) (staying derivative action pending resolution of securities class action); *Brudno v. Wise*, 2003 WL 1874750, at *1, *4 (Del. Ch. Apr. 1, 2003) (same).

Second, allowing this action to proceed simultaneously with the Securities Class Action would prejudice the best interests of AOB, "[b]ecause the very evidence that would tend to prove Plaintiff's case . . . would also severely undermine [the Company's] defense in the Federal Securities Class Action." *STEC*, 2012 WL 8978155, at *6.  "The Individual Defendants are likely witnesses in both cases, but [Plaintiff] must attempt to undermine their credibility while the

---

agreed to stay their actions until the motion to dismiss the securities class action was resolved, one group of federal derivative plaintiffs refused to enter into a stay. Here, the Nevada plaintiff has agreed to stay his action pending resolution of the motions to dismiss in the Securities Class Action, but this Plaintiff has refused to enter into such a stay.

[17]  *Accord In re First Solar Derivative Litig.*, 2012 WL 6570914, at *2 (D. Ariz. Dec. 17, 2012) (staying derivative action in deference to securities class action because "[b]oth suits involve the same public statements and disclosures"); *STEC*, 2012 WL 8978155, at *6 (similar); *Cucci v. Edwards*, 2007 WL 3396234, at *2 (C.D. Cal. Oct. 31, 2007) (similar); *Breault v. Folino*, 2002 WL 31974381, at *1 (C.D. Cal. Mar. 15, 2002) (similar); *Brendle v. Smith*, 46 F. Supp. 522, 525 (S.D.N.Y. 1942) (similar).

Company presumably will attempt to rely on their veracity." *Brenner*, 2012 WL 252286, at \*6.  Moreover, "[t]his [derivative] action will divert [the Company's] financial and management resources from the pending [securities] litigation[] against it." *Breault*, 2002 WL 31974381, at \*2.  Therefore, "denying a stay will potentially cause substantial harm to [the Company], the party on whose behalf this derivative action has been brought." *Rosenblum*, 2008 WL 9396534, at \*8.[18] Because this derivative action is purportedly brought on behalf of AOB, "Plaintiff is [the Company's] fiduciary and has a duty to act in the company's best interest. It follows that Plaintiff may proceed with this action *only if and when it is in [the Company's] best interest*." *STEC*, 2012 WL 8978155, at \*4.

Third, a stay would promote an orderly disposition of the issues.  "A resolution of the class claims would significantly simplify the central issue in the derivative case, *i.e.*, the scope of the individual defendants' liability." *Groupon*, 882 F. Supp. 2d at 1049.  It would make no sense for this case to advance before resolution of the Securities Class Action, because "this case is, in reality, a claim primarily for indemnification." *Brudno*, 2003 WL 1874750, at \*4.  Indeed, Plaintiff's claim for damages is largely, if not entirely, predicated on the existence

---

[18]  *Accord First Solar*, 2012 WL 6570914, at \*2 (simultaneous litigation of derivative and securities class action would cause company to "face the practical difficulty of pursuing potentially divergent strategies" and "will increase the cost of the overall litigation"); *Cucci*, 2007 WL 3396234, at \*2 ("[P]rosecution of the Shareholder Derivative Action would likely conflict with [the company's] defense of the Securities Class Action.").

of liability in the Securities Class Action.  *See* ¶¶ 91-94. [19]  If the Securities Class Action were to be dismissed, "it is not apparent what, if anything, would be left of this Action."  *Brudno*, 2003 WL 1874750, at *4.  At the very least, "the outcome of the Federal Securities Class Action will inform the advisability of the derivative action" and will "bear . . . on the prudence" of acting on Plaintiff's demand.  *STEC*, 2012 WL 8978155, at *6, *7.  A stay would therefore assist the Board in the rational exercise of its business judgment in acting on Plaintiff's demand.  A stay would also "obviate the threat of conflicting outcomes in the cases."  *Id.* at *6.[20]

Finally, Plaintiff will suffer no prejudice from a stay.  "A stay will not significantly prolong Plaintiff's re[a]lizing relief because Plaintiff's potential relief relies in part on the outcome of the Federal Securities Class Action."  *STEC*, 2012 WL 8978155, at *8.  "Moreover, any potential harm from delayed litigation is more than outweighed by the harm of denying the stay and forcing [the Company] to expend resources on this derivative suit, and the harm to [the Company] of having its witnesses for the Securities Class Action undermined in this action."

---

[19]  While Plaintiff also asserts other theories of damage, those allegations fail to state a claim.  *See infra* at 35-37.  Even if some part of Plaintiff's claims were not dependent on the result of the Securities Class Action, that would not undermine the basis for a stay.  *See, e.g.*, *Brudno*, 2003 WL 1874750, at *4 ("whether or not the derivative claims are, in some measure, ripe enough for current assertion, they cannot be adjudicated in full (or even in large measure) until the Federal Securities Action is tried."); *Brenner*, 2012 WL 252286, at *6 (similar).

[20]  *Accord Brenner*, 2012 WL 252286, at *6 ("simultaneous prosecution of both actions" would lead to "a risk of inconsistent rulings").

*Id.*; *accord Brenner*, 2012 WL 252286, at *4 ("In this case, the practical considerations Defendants have identified in support of their motion to stay outweigh the prejudice Plaintiff will suffer if the motion is granted.").

### B.     This Action Should Be Further Stayed Pending A Final Resolution Of The Nevada Derivative Action

Under the *Colorado River* abstention doctrine, courts engage in a two-step analysis. First, the court determines whether the concurrent state and federal suits are "parallel." *Pinnacle Ins. Solutions, LLC v. Kolbe*, 2014 WL 1272212, at *3 (D.N.J. Mar. 27, 2014). Second, the court balances a set of factors regarding abstention. *Id.* Both steps of the analysis support a stay of this action pending resolution of the Nevada Derivative Action.

First, the actions are parallel. Both this action and the Nevada Derivative Action assert substantively identical claims against the same nine Individual Defendants. *Compare, e.g.*, ¶¶ 35, 44-47, 50, 53, 56, 59, 61, 61, 71, 78 *with* Seib Decl., Ex. D (Nevada Deriv. Compl. ¶¶ 30-39, 41, 43-45, 49, 56, 89). While there is a different plaintiff in each case, both actions are being pursued on behalf of nominal defendant, AOB, who is the real party in interest. There need not be a precise identity of claims and parties in order for actions to be parallel. *See Pinnacle Ins.*, 2014 WL 1272212, at *4 (federal and state court actions were parallel even though "the claims raised in the proceedings are different," because the underlying factual allegations and issues were substantially similar); *Clark v.*

*Lacy*, 376 F.3d 682, 686-87 (7th Cir. 2004) (federal and state derivative actions were parallel, notwithstanding different nominal plaintiffs and additional named defendants and causes of action in federal action:  "Just as the parallel nature of the actions cannot be destroyed by simply tacking on a few more defendants, neither can it be dispelled by repackaging the same issue under different causes of action.").[21]

Second, the six factors set forth by *Colorado River* and its progeny support the entry of a stay.  In determining whether to abstain from exercising jurisdiction in deference to a parallel state action, a federal court must balance the following factors:  (1) which court first assumed jurisdiction over property involved, if any; (2) the relative convenience of the fora; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law applies; and (6) whether the state court will adequately protect the federal plaintiff's interests.  *Pinnacle Ins.*, 2014 WL 1272212, at *4.

The first factor is inapplicable, as this is not an *in rem* action.  The second factor—the relative convenience of the fora—favors abstention.  AOB has no

---

[21]  *Accord Moradi*, 2014 WL 1413627, at *6 (federal and state derivative actions that alleged same wrongdoing by corporation's management were parallel for purposes of *Colorado River*:  "Exact parallelism is not required, but the actions must be substantially similar."); *In re Wal-Mart Stores, Inc. S'holder Derivative Litig.*, 2012 WL 5935340, at *2 (W.D. Ark. Nov. 27, 2012) (similar); *Taylor v. Campanelli*, 2014 WL 2931816, at *4 (E.D. Mich. June 30, 2014) (similar); *Ash v. Alexander*, 2000 WL 20704, at *2-3 (S.D.N.Y. Jan. 12, 2000) (similar); *Shallal v. Elson*, 1999 WL 33957906, at *3-5 (S.D. Fla. Apr. 12, 1999) (similar).

physical presence in the United States, but counsel for the U.S. Outside Directors is located in California, where the Securities Class Action is pending, and counsel for AOB is located in California and New York.  Therefore, it would be more convenient for the derivative litigation to be conducted in Nevada, which is AOB's state of incorporation and geographically more convenient for most of Defendants' counsel.  It would also be more convenient for the derivative litigation to be conducted in one, rather than two, courts.  Because AOB is the real party in interest, it is only the convenience of the Company, not that of Plaintiff or Plaintiff's counsel, that matters for this purpose.  *See Shallal*, 1999 WL 33957906, at *4 ("In the derivative context, the expense to the corporation must be considered because the real party in interest is the corporation. . . . The multiplicity of litigating actions that are undisputedly exactly the same multiplies the expense to the corporation, in time, money, and resources.").

The third factor—the desirability of avoiding piecemeal litigation—supports abstention.  A number of federal courts have held that this factor weighs in favor of *Colorado River* abstention when a parallel shareholder derivative action is pending in state court.  *See, e.g.*, *Taylor*, 2014 WL 2931816, at *6 (where federal derivative action was based on "nearly identical" factual allegations and causes of action as parallel state derivative action, avoidance of piecemeal litigation "weighs heavily in favor of abstention"); *Moradi*, 2014 WL 1413627, at *4-5 ("The state and

federal [derivative] cases give rise to a special concern about piecemeal litigation. This factor thus weighs in favor of a stay.").[22]

The fourth factor—the order in which jurisdiction was obtained—also favors abstention. The Nevada Derivative Action was filed on October 1, 2012, and this action was filed on December 6, 2012.[23]

The fifth factor—whether federal or state law applies—supports abstention. The legal issues in both this case and the Nevada Derivative Action are entirely questions of Nevada law. *See, e.g.*, *Clark*, 376 F.3d at 688 ("A state court's expertise in applying its own law favors a *Colorado River* stay."); *Wal-Mart*, 2012 WL 5935340, at *6 ("Because Delaware law is controlling over Plaintiffs' claims, this factor weighs in favor of abstention.").[24]

---

[22] *Accord Wal-Mart*, 2012 WL 5935340, at *5 ("If this Court does not abstain, there will be separate judgments from two courts ruling on the same issues and applying the same bodies of law. The potential for duplicative efforts and inconsistent rulings is certainly present."); *Clark*, 376 F.3d at 687 (similar); *Ash*, 2000 WL 20704, at *3 (similar).

[23] The fact that the Nevada Derivative Action has been stayed pending resolution of the motions to dismiss in the Securities Class Action does not affect the abstention analysis. *See, e.g.*, *Lorentzen v. Levolor Corp.*, 754 F. Supp. 987 (S.D.N.Y. 1990) (staying federal action in favor of parallel state action under *Colorado River*, even though state court had ruled that plaintiff must participate in arbitration proceedings before it would rule on plaintiff's claims).

[24] *Accord Ash*, 2000 WL 20704, at *3 ("New York courts possess particular competence in determining what constitutes a breach of fiduciary duty under New York corporate law."); *Giles v. ICG, Inc.*, 789 F. Supp. 2d 706, 713-14 (S.D.W.V. 2011) ("[T]hese claims are governed by Delaware law under the 'internal affairs' doctrine. . . . The parties would . . . benefit from the expertise of the Court of Chancery in determining whether the defendants . . . breached their fiduciary

The sixth factor—whether the state court will adequately protect the federal plaintiff's interests—also supports abstention.  "[T]here is no fear that [Plaintiff's] rights will not be adequately protected in the state proceeding as the same questions of law and fact are presented as in the federal case and the state court can resolve these questions just as effectively."  *Clark*, 376 F.3d at 688.  "The Court has no reason to believe that Nevada state court is an inadequate forum to protect the federal litigants' rights."  *Moradi*, 2014 WL 1413627, at *6.  "This factor is thus either neutral or slightly favors a stay."  *Id.*

In sum, the factors this Court is required to consider in a *Colorado River* analysis strongly support a stay.  If the Court allows both derivative actions to proceed simultaneously, it will burden the Company (the real party in interest that Plaintiff purports to represent) with duplicative, piecemeal litigation and risk inconsistent rulings.  Because this case solely involves questions of Nevada corporations law, it would be wise to allow these issues to be decided by a Nevada state court.

---

duties."); *Bushansky v. Armacost*, 2012 WL 3276937, at *4 (N.D. Cal. Aug. 9, 2012) (similar); *Taylor*, 2014 WL 2931816, at *7 (similar).

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

## IV.   IN THE ALTERNATIVE THIS ACTION SHOULD BE DISMISSED

### A.   Plaintiff Has Failed To Plead Standing

#### 1.   Plaintiff Has Failed To Plead The Date He Purchased His Stock And Has Provided No Evidence Of Stock Ownership

Rule 23.1 of the Federal Rules of Civil Procedure requires that a shareholder derivative plaintiff allege with particularity that he was a shareholder "at the time of the transaction complained of."  Fed. R. Civ. P. 23.1.  This requirement is mirrored by Nevada Rule of Civil Procedure 23.1, which also requires a derivative plaintiff to allege that he "was a shareholder . . . at the time of the transaction of which the plaintiff complains."  This requirement requires both *contemporaneous* ownership (*i.e.*, that the plaintiff owned the shares at the time of the alleged wrongdoing) and *continuous* ownership (*i.e.*, that the plaintiff continue to own those shares throughout the entire period of the alleged wrongdoing and throughout the pendency of the derivative litigation).  *See, e.g.*, *Sokolowski*, 2014 WL 3748191, at *2 ("Rule 23.1 has been interpreted to require that a derivative plaintiff be a shareholder at the time of the alleged wrongful acts and that the plaintiff retain ownership of the stock for the duration of the lawsuit.").[25]

---

[25] The continuous and contemporaneous ownership requirements are not merely procedural requirements but substantive requirements of Nevada law.  *Cf. Richelson v. Yost*, 738 F. Supp. 2d 589, 598 (E.D. Pa. 2010) ("[B]oth the pleading requirements in Rule 23.1 *and substantive Delaware law require* . . . that the party seeking to sue derivatively actually be a shareholder at the time the transaction in question took place."); *Parfi Holding AB v. Mirror Image Internet, Inc.*, 954 A.2d

Courts have interpreted Rule 23.1 to require plaintiffs to allege the exact dates that they purchased a company's shares and have dismissed derivative actions against Nevada corporations, like AOB, for failing to plead such information. *See, e.g., Sokolowski*, 2014 WL 3748191, at *3 (dismissing derivative action because plaintiff failed to "precisely indicate the stock acquisition date in the complaint"); *In re RINO Int'l Corp. Derivative Litig.*, 2011 WL 5245426, at *2 (D. Nev. Nov. 2, 2011) (allegation that plaintiff continuously held stock during "relevant period" insufficient; plaintiff must allege actual date stock was purchased).

Here, the Complaint merely alleges that "Plaintiff was a shareholder at the time of the wrongdoing of which he complains and has continuously been a shareholder." ¶ 15.  The Complaint does not identify the specific date(s) that Plaintiff purchased his shares, nor does it indicate whether Plaintiff held his shares throughout the entire alleged Relevant Period.  Courts have routinely rejected similar allegations. *See, e.g.*, *Smith v. Stevens*, 957 F. Supp. 2d 466, 469 (S.D.N.Y. 2013) (plaintiff's allegation of ownership was insufficient where plaintiff did not allege ownership throughout the entire period of alleged wrongdoing; a "mere allegation of ownership" without specific dates is insufficient to establish standing

911, 938 (Del. Ch. 2008) (recognizing "**substantive** policy behind the continuous ownership rule").

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

under Rule 23.1 "in this post-*Twombly* era");[26]  *In re Computer Scis. Corp. Derivative Litig.*, 2007 WL 1321715, at *15 (C.D. Cal. Mar. 26, 2007) (allegations that each plaintiff "is, and was at all times relevant to" the allegations in the complaint a shareholder insufficient for the purposes of pleading contemporaneous ownership under Fed. R. Civ. P. 23.1).[27]

In an effort to resolve this issue, the U.S. Outside Directors and the Company requested that Plaintiff voluntarily provide the date(s) and details of his stock purchases.  *See* Seib Decl., Exs. L &M.  Plaintiff's counsel responded on the day of this filing by stating that Plaintiff "has continuously owned shares of AOB from at least February 24, 2011 to present."  *See* Seib Decl., Ex. N.  Assuming the truth of this statement, it necessarily means that Plaintiff lacks standing to assert claims based on alleged wrongdoing that occurred prior to February 24, 2011.  *See, e.g.*, *Gallup v. Caldwell*, 120 F.2d 90, 95 (3d Cir. 1941) (in a derivative action, "the plaintiff may complain only of acts occurring subsequent to her becoming the owner of shares in the defendant company.");  *Sprando v. Hart*, 2011 WL 3055242,

---

[26] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (plaintiff must allege a plausible set of facts sufficient "to raise a right to relief above the speculative level").

[27]  *See also Guerrino v. Ohio Cas. Ins. Co.*, 423 F.2d 419, 422 (3d Cir. 1970) (plaintiffs failed to comply with Rule 23.1 because there were no allegations or proof in the record that the plaintiffs were shareholders in the company); *In re Capital One Derivative S'holder Litig.*, 952 F. Supp. 2d 770, 795 (E.D. Va. 2013) (dismissing action where each plaintiff alleged that he/she "is and was a shareholder at all relevant times" but did not specify dates of ownership).

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

at *3 (D. Nev. July 22, 2011) (for a Nevada corporation, a derivative plaintiff "lacks standing to bring a shareholder derivative suit almost entirely based on alleged acts that occurred prior to his stock ownership").[28]  The central accounting error in connection with the Nuo Hua Transaction was the initial failure to record the transaction when the contract for the sale of the Nuo Hua Affiliate was executed, which occurred on September 27, 2010.  ¶ 48.  Plaintiff therefore lacks standing to represent AOB in a derivative action challenging that accounting decision.

In any event, Plaintiff's Complaint must still be dismissed, because the allegations asserted in a letter by counsel are not part of the Complaint.  *See, e.g.*, *RINO*, 2011 WL 524526, at *2 n.1 ("Plaintiffs' statements as to the dates they purchased the stock in their response are immaterial.  It is axiomatic that the Court cannot consider additional facts first presented in Plaintiffs' response, but only facts in the complaint."); *Penn. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173,

---

[28] *Accord* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1828 ("When a series of wrongful transactions is alleged and some of them transpired before plaintiff became a shareholder but others took place subsequent to that date, the shareholder's action may be maintained only on the basis of the later events."); *In re Computer Scis. Corp. Derivative Litig.*, 244 F.R.D. 580, 591 (C.D. Cal. 2007) (under Nevada law, "Plaintiffs do not have standing to challenge . . . option grants that occurred prior to the time that they purchased [the company's] stock."); *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1202 (N.D. Cal. 2007) ("A derivative plaintiff has no standing to challenge option transactions that occurred prior to the time that plaintiff owned company stock.").

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

181 (3d Cir.1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

### 2.    Plaintiff Has Made A Demand, And Therefore Lacks Standing In The Absence Of A Wrongful Refusal

"Under Nevada law, a shareholder retains standing to bring a derivative action only where [he] sufficiently pleads compliance with the demand requirement."  *Morefield v. Bailey*, 959 F. Supp. 2d 887, 898 (E.D. Va.  2013). This requirement may only be satisfied if a plaintiff sufficiently pleads (a) that he "is excused from making a demand that would be futile," or (b) that he "made demand and the board wrongfully refused [his] demand to take action."  *Id.*[29] These two types of situations are often referred to as "demand excused" and "demand refused" cases.

Once a shareholder makes a demand, that shareholder loses the ability to claim that demand is excused and may only assert a derivative claim if the board wrongfully refuses the demand.  *See Morefield*, 959 F. Supp. 2d at 898 ("'A shareholder who makes a demand can no longer argue that demand is excused.'") (quoting *Spiegel*, 571 A.2d at 775); *In re Smith & Wesson Holding Corp. Derivative Litig.*, 743 F.Supp. 2d 14, 19 & n.3 (D. Mass. 2010) ("[B]y issuing a

---

[29] *Accord Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1179-80 (Nev. 2006) ("[A] shareholder must set forth particularized factual statements that are essential to the claim that *a demand has been made and refused*, *or* that making *a demand would be futile* or otherwise inappropriate.").

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

demand rather than pleading that demand was excused, Plaintiffs have 'tacitly

concede[d] the independence of a majority of the board to respond.'") (quoting

*Spiegel*, 571 A.2d at 777).  Therefore, "[t]he effect of a demand is to place control

of the derivative litigation in the hands of the board of directors."  *Spiegel*, 571

A.2d at 775.  "[O]nce a demand has been made, absent a wrongful refusal, the

stockholders' ability to initiate a derivative suit is terminated."  *Id.*[30]

      Pursuant to these principles, Plaintiff clearly lacks standing because he

made a demand on AOB's Board, which the Board never refused, let alone

wrongfully refused.  Plaintiff allegedly sent his demand letter to AOB's registered

agent via certified mail on October 3, 2012 (the "Demand Letter," a copy of which

is attached as Exhibit 1 to the Complaint).  The letter demanded that AOB's Board

investigate whether the Individual Defendants breached their fiduciary duties, as

well as the "bonuses, restricted stock, stock options, and other incentive

compensation" they received.  Two months later, on December 6, 2012, without

---

[30] The Nevada Supreme Court has not defined the pleading requirements for a
"demand refused" case.  However, the Nevada Supreme Court has directly adopted
Delaware's pleading standards for "demand excused" cases.  *Shoen*, 137 P.3d at
1186-87.  And two recent federal cases have applied *Spiegel* to "demand made"
cases involving Nevada corporations, noting that Nevada courts "generally look to
Delaware for guidance on issues of corporate law, and the demand requirement is
no exception."  *Smith & Wesson*, 743 F. Supp. 2d at 19; *accord Morefield*, 959 F.
Supp. 2d at 897 ("Nevada looks to Delaware law on issues of corporate law,
including the demand requirement."); *see generally Hilton Hotels Corp. v. ITT
Corp.*, 978 F. Supp. 1342, 1346 (D. Nev. 1997) ("Where . . . there is no Nevada
statutory or case law on point for an issue of corporate law, this Court finds
persuasive authority in Delaware case law.").

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

having received any response, Plaintiff filed this lawsuit.

As AOB previously explained in a letter to this Court, "[a]though AOB's registered agent apparently was served in this action on or about December 11, 2012, AOB inadvertently was not made aware of that fact until after the time for AOB to file a responsive pleading had passed and Plaintiff had moved to enter a default."[31]  And, as AOB further explained in a letter sent to Plaintiff's counsel on January 29, 2013 (the "Response Letter"), AOB only became aware of the Demand Letter after the filing of the Complaint.[32]  The Response Letter further stated that AOB's Board, in consultation with its Audit Committee, would consider Plaintiff's demands and act on them at an appropriate time, and invited Plaintiff to share any information he had to assist the Board in its decision making.  *See* Seib Decl., Ex. J.  Plaintiff provided no further information in response.

Accordingly, AOB's Board has not refused to act on Plaintiff's demand, but instead has simply not yet reached a decision.  That posture is a perfectly prudent exercise of the Board's business judgment, because, as discussed above, the

---

[31] Dkt. No. 17 (Letter from Eugene Licker, Counsel for Nominal Defendant AOB, to Hon. Michael Shipp, U.S. District Judge, Oct. 16, 2013).

[32] *See* Seib Decl., Ex. J.  Courts may consider correspondence related to a shareholder's demand on a motion to dismiss, even if such correspondence is not referred to in the complaint.  *See, e.g.*, *Sprando*, 2011 WL 3055242, at *4 (in deciding motion to dismiss a derivative action involving a Nevada corporation, court considered correspondence between the parties after plaintiff's demand on the board).  Even if the Court were not consider AOB's Response Letter, Plaintiff's filing of the suit was nevertheless premature for the reasons explained *infra*.

outcome of the Securities Class Action "will inform the advisability of the

derivative action" and will "bear . . . on the prudence" of acting on Plaintiff's

demand. *STEC*, 2012 WL 8978155, at *6, *7.[33]  Any decision as to how to act on

Plaintiff's demand would, at this point, be premature.[34]

### B.    The Complaint Fails To State A Claim

#### 1.    Plaintiffs' Claims For Breach Of Fiduciary Duty Are Subject To A Heightened Pleading Standard

Under Nevada law, claims for intentional breaches of fiduciary duty must be

pled with particularity.  *See In re Amerco Derivative Litig.*, 252 P.3d 681, 700

(Nev. 2011) (breach of fiduciary duty claims that sound in fraud must "satisfy the

heightened pleading requirement of NRCP 9(b).").  The same is true under Federal

Rule of Civil Procedure 9(b).  *See, e.g.*, *Cal. Pub. Emps' Ret. Sys. v. Chubb Corp.*,

394 F.3d 126, 144 (3d Cir. 2004) (cause of action grounded in fraud is subject to

---

[33] *See also Piven v. Ryan*, 2006 WL 756043, at *3 (N.D. Ill. Mar. 23, 2006) ("A board's decision to delay responding to a demand in order to focus on related litigation is reasonable."); *Maccoumber v. Austin*, 2004 WL 1745751, at *6 (N.D. Ill. Aug. 2, 2004) ("The Board's decision to postpone its investigation is reasonable given that it is currently litigating related issues in state court.").

[34] Nor could the Board's failure to respond to Plaintiff's demand within a two month period somehow be construed as tantamount to a wrongful refusal.  *See, e.g.*, *Smith & Wesson*, 743 F. Supp. 2d at 18, 21 (derivative action filed four and a half months after plaintiff's initial demand letter was "clearly premature" under Nevada law because plaintiff did not provide the board with "sufficient opportunity to investigate the demand before filing suit"); *Renfro v. FDIC*, 773 F.2d 657, 659-60 (5th Cir. 1985) (derivative action filed two months after demand was premature, even though receiver provided no response to shareholders, because plaintiffs "took no steps to assist the investigation or to determine its status before filing").

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

Rule 9(b)); *Roll v. Singh*, 2008 WL 3413863, at *22 (D.N.J. June 26, 2008) (securities action alleging breach of fiduciary duties was subject to Rule 9(b) because the allegation sounded in fraud).

In this case, Plaintiff's claims are grounded in fraud and are therefore subject to the heightened pleading standards of Rule 9(b),[35] as Plaintiff alleges that the Individual Defendants engaged in a fraudulent course of conduct.[36]  Pursuant to Rule 9(b), Plaintiff must allege the "who, what, when, where and how" of the purported scheme and describe each Individual Defendant's role in it.  *Cal. Pub. Emps' Ret. Sys.*, 394 F.3d at 144.

In addition to Rule 9(b)'s requirements, claims against corporate officers and directors for breach of fiduciary duty must be pled with particularity.  Officers and directors of a Nevada corporation are presumed to have acted on an informed

---

[35]  Rule 9(b) also applies to Plaintiff's claims for waste and unjust enrichment. *See, e.g., Crete v. Resort Condos. Int'l, LLC*, 2011 WL 666039, at *5-6 (D.N.J. Feb. 14, 2011) (unjust enrichment claim subject to Rule 9(b)); *In re Accuray, Inc. S'holder Derivative Litig.*, 757 F. Supp. 2d 919, 934-35 (N.D. Cal. 2010) (applying Rule 9(b) to breach of fiduciary duty and waste claims).

[36]  *See, e.g.*, ¶ 37 ("[T]he Individual Defendants . . . *conspired* with one another in furtherance of their common plan or design."); ¶ 38 ("[T]he Individual Defendants, collectively and individually, *initiated a course of conduct that was designed to and did: (1) deceive the investing public, including shareholders of AOB*."); ¶ 39 ("The purpose . . . of the Individual Defendants' *conspiracy, common enterprise, and/or common course of conduct* was . . . to *disguise* the Individual Defendants' violations of law, breaches of fiduciary duty, and unjust enrichment."); ¶ 91 ("These defendants . . . engage[d] in a *scheme* to inflate and/or inaccurately represent the Company's earnings, revenue, and cash balance figures *in order to mislead* investors.").

basis, with due care, in good faith, and in the honest belief that their actions were in the best interest of the company.  *See* Nev. Rev. Stat. § 78.138(3); *Rapaport v. Soffer*, 2012 WL 2522069, at *5 (D. Nev. June 29, 2012); *Amerco*, 252 P.3d at 700.  At the pleading stage, courts commonly find conclusory assertions that officers and directors breached their fiduciary duties to be inadequate.  *See, e.g.*, *Lewis v. Chrysler Corp.*, 949 F.2d 644, 653 (3d Cir. 1991).

### 2.   AOB's Articles Of Incorporation Bar Director And Officer Liability For Anything Other Than Intentional Misconduct, Fraud, Or A Knowing Violation of Law.

Under Nevada law, a plaintiff must demonstrate that a defendant acted with at least gross negligence in order to rebut the presumption of the business judgment rule.  *See, e.g.*, *Shoen*, 137 P.3d at 1184.  However, when a company has adopted the exculpation provision permitted under Nevada law in its articles of incorporation, as AOB has,[37] a plaintiff must plead facts showing that directors ***deliberately*** breached their fiduciary duties in order to state a claim.  *See* Nev. Rev. Stat. § 78.138(7) (unless a company adopts a provision in its articles of incorporation providing otherwise, or one of a limited set of enumerated exceptions applies, "a director or officer is not individually liable to the

---

[37]  *See* Seib Decl., Ex. H (Article IX to Amendment and Restatement of Articles of Incorporation) ("The personal liability of a director or officer of the Corporation to the Corporation or the stockholders for damages for breach of fiduciary duty as a director or officer shall be limited to acts or omissions which involve intentional misconduct, fraud or a knowing violation of law, to the extent permissible under the NRS.").

corporation or its stockholders . . . for any damages as a result of any act or failure to act . . . unless it is proven that . . . [t]he breach of those duties involved intentional misconduct, fraud or a knowing violation of law").

The enumerated exceptions to the statute are inapplicable to the case at bar. *See id.* Thus, to avoid the provision, Plaintiff must plead particularized facts showing that the defendants' breach of their duties "involved intentional misconduct, fraud or a knowing violation of the law." *Id.* at § 78.138(7)(b); *see Strickland v. Hongjun*, 2011 WL 2671895, at *2 (S.D.N.Y. July 8, 2011) ("Nevada law exculpates directors and officers from individual liability to the corporation or its stockholders except in instances of intentional misconduct, fraud, or a knowing violation of law."), *aff'd sub nom. Drobner v. Bruce*, 531 F. App'x 96, 97 (2d Cir. 2013) (affirming dismissal of derivative action because plaintiff failed to "allege with the requisite particularity that [defendant's] conduct involved intentional misconduct, fraud or a knowing violation of law, as required under the applicable Nevada law to state a claim for breach of fiduciary duty).[38] Here, the Complaint

---

[38] *Accord Fosbre v. Matthews,* 2010 WL 2696615, at *6 n.6 (D. Nev. July 2, 2010) (dismissing a breach of fiduciary duty claim that failed to plead the necessary particularized facts to overcome Nevada's exculpatory statute); *Morefield*, 959 F. Supp. 2d at 903 ("Nevada statutory law limits individual liability for such breaches to only those situations where . . . the breach involves intentional misconduct, fraud or a knowing violation of the law."); *Israni v. Bittman*, 473 F. App'x 548, 551 (9th Cir. 2012) (noting that Nevada law requires a complaint to contain "particularized facts showing that the committee members engaged in intentional misconduct, fraud, or a knowing violation of the law").

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

fails to plead with particularity any facts that demonstrate "intentional misconduct, fraud, or a knowing violation of law" by the Individual Defendants, and that is particularly the case for the U.S. Outside Directors.  Accordingly, the Complaint should be dismissed.

### 3.     The Complaint Fails To State A Claim For Breach Of Fiduciary Duty Based On The Issuance Of False Statements

Plaintiff's claim for breach of fiduciary duty under Count I is predicated on the alleged dissemination of false or misleading information.  ¶ 94.  This claim fails because (1) Plaintiff fails to adequately plead that any of the Individual Defendants knew that the statements were false; and (2) Plaintiff fails to adequately allege any harm to the Company.

### (a)     The Complaint Fails To Adequately Allege That The Individual Defendants Knew The Representations Were False

Plaintiff alleges that the Individual Defendants breached their fiduciary duties by "*allowing* the Individual Defendants to cause *or by themselves causing* the Company to issue improper statements regarding AOB's financial results." ¶ 36.  Both of these theories—*i.e.*, that the Individual Defendants either directly "caused" the dissemination of false statements, or indirectly "allowed" other Individual Defendants to disseminate false statements—are unaccompanied by any particularized pleading of facts and fail to state a claim under Nevada law.

First, Plaintiff has failed to plead any facts showing that any Individual

Defendant *knowingly* disseminated false or misleading information.  *See Malone v.*

*Brincat*, 722 A.2d 5, 9 (Del. 1998) (requiring knowing dissemination for breach of

fiduciary duty claim).  This requirement "is similar to, but even more stringent

than, the level of scienter required for common law fraud."  *Metro Commc'ns*

*Corp. BVI v. Advanced Mobilecomm Techs. Inc.*, 854 A.2d 121, 158 (Del. Ch.

2004).[39]  Plaintiff must plead facts with particularity that "suggest that the directors

acted in bad faith or with intent to allow the shareholders to be harmed."  *In re*

*Dataproducts Corp. S'holders Litig.*, 1991 WL 165301, at \*6 (Del. Ch. Aug. 22,

1991).[40]  Here, Plaintiff has not pled any facts suggesting such an intent on behalf

of any of the Individual Defendants, but the defect is particularly glaring as to the

U.S. Outside Directors.[41]

---

[39] *Accord Morefield*, 959 F. Supp. 2d at 904 ("Recklessness is not intent, thus [a] finding [of recklessness in a securities case] cannot in and of itself demonstrate intentional misconduct in violation of [defendants'] fiduciary duties.").

[40]  *See also Morefield*, 959 F. Supp. 2d at 904 (dismissing breach of fiduciary duty claims under Nevada law because plaintiff failed to plead particularized "facts demonstrating the content of the false statements and that the author of such statement intended to mislead shareholders or others about the information contained within the various press releases and filings"); *York Linings v. Roach*, 1999 WL 608850, at \*3 (Del. Ch. July 28, 1999) (breach of fiduciary duty claim based on alleged fraud must be pled with particularity).

[41] Indeed, as acknowledged by the plaintiffs in the Securities Class Action, there are no facts suggesting any scienter on the part of the U.S. Outside Directors.  *See* Seib Decl., Ex. C (FAC ¶ 169) (claiming that the alleged misconduct at AOB "went undetected by the audit committee").  Those plaintiffs amended their complaint to remove any claims against the U.S. Outside Directors for any direct liability under Section 10(b), and now only assert secondary liability under Section

Plaintiff is therefore left with the claim that the U.S. Outside Directors "allowed" management to make the alleged misstatements by failing to engage in adequate oversight.  This is generally known as a *Caremark* claim, which the Delaware Chancery Court has described as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment."  *In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996).  When director liability is predicated upon a failure to prevent or correct liability-creating activity, "only a sustained or systematic failure of the board to exercise oversight . . . will establish the lack of good faith that is a necessary condition to liability." *Id.* at 971.[42]  The Complaint does not plead any facts suggesting that the U.S. Outside Directors engaged in any "sustained or systematic failure" of oversight.[43]

Finally, even assuming the Individual Defendants knew the representations

---

20(a) based upon the U.S. Outside Directors' alleged status as "control persons." *See* Seib Decl., Ex. C.

[42] *See also Stone v. Ritter*, 911 A.2d 362, 369-70 (Del. 2006) (clarifying that the Caremark standard requires bad faith conduct amounting to a violation of the duty of loyalty:  "imposition of liability requires a showing that the directors ***knew*** that they were not discharging their fiduciary obligations").

[43] The application of *Caremark* applies not only to Plaintiff's allegation the U.S. Outside Directors "allowed" the dissemination of false statements, but also to his allegations that they "fail[ed] to implement an effective system of internal and financial controls; and . . . fail[ed] to implement corrective measures to protect the Company from incurring further harm caused by the improper statements."  ¶ 36. *See Morefield*, 959 F. Supp. 2d at 906 (dismissing allegations that directors of a Nevada corporation failed to implement effective internal controls pursuant to *Caremark*:  "The existence of deficiencies in the internal audit practice does not equate to the Board members being conscious of a failure to do their jobs.").

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

were false, Plaintiff's claim should still be dismissed because in Nevada, false and misleading statements in SEC filings do not support a breach of fiduciary duty claim. *See Brignand v. Van Wagoner Funds, Inc.*, 2009 WL 2175623, at *6 (D. Nev. July 16, 2009) (noting that plaintiff "fail[ed] to cite any authority for the proposition that a false, misleading, or improperly prepared annual report breaches a fiduciary duty."). Accordingly, even if the Individual Defendants knew that the statements in the annual and quarterly reports were misleading, Plaintiff still fails to state a claim upon which relief could be granted.

### (b)   The Complaint Fails To Adequately Allege Any Harm To AOB

Plaintiff has not pled any cognizable harm to AOB as is required by Nevada law. *See Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009) ("[A] breach of fiduciary duty claim seeks damages for injuries that result from the tortious conduct of one who owes a duty to another by virtue of the fiduciary relationship."). Each harm that the Complaint alleges relates to the filing and the unproven allegations of the Securities Class Action, which allegedly caused (i) harm to AOB's reputation and market capitalization, (ii) costs associated with investigating and defending those matters, (iii) potential costs associated with settling or paying an adverse judgment, and (iv) costs from compensating the Individual Defendants for their employment.   ¶¶ 79-82.

None of these constitutes legally cognizable harm at this juncture.  Courts

have routinely dismissed derivative actions that are contingent upon a finding of future liability in another action.  *See, e.g.*, *In re Isolagen Inc. Sec. & Derivative Litig.*, 2007 WL 1101278, at *2 (E.D. Pa. Apr. 10, 2007) (dismissing derivative action because "[t]he majority of the damages the Plaintiff is claiming are contingent upon the outcome of the related securities class action which is still pending").[44]  This derivative action is essentially one for indemnification against the Individual Defendants for liability that AOB might one day incur in the Securities Class Action.  Under Nevada law, "[a] cause of action for indemnity or contribution accrues when payment has been made."  *See Aetna Cas. & Sur. Co. v. Aztec Plumbing Corp.*, 796 P.2d 227, 229 (Nev. 1990).  As such, the required element of damage has not yet accrued and the claim is not ripe for adjudication. *See In re Symbol Techs. Sec. Litig.*, 762 F. Supp. 510, 516-17 (E.D.N.Y. 1991) (dismissing derivative action because the plaintiff's claims "hinge[d] entirely on the outcome of another pending action" and therefore "this cause of action is more appropriately treated as an action for indemnification, which has not yet accrued").

Plaintiff's assertion that the Company has already suffered harm from the

---

[44]  *Accord Dollens v. Zionts*, 2002 WL 1632261, at *9 (N.D. Ill. July 22, 2002) ("plaintiffs cannot bring a derivative action to recover expenses from a pending securities action"); *In re United Telecomms., Inc., Sec. Litig.*, 1993 WL 100202, at *3 (D. Kan. Mar. 4, 1993) ("Where, as here, the claim of damages is contingent on the outcome of a separate, pending lawsuit, the claim is not ripe and the complaint must be dismissed."); *Daisy Sys. Corp. v. Finegold*, 1988 WL 166235, at *4 (N.D. Cal. Sept. 19, 1988) (similar); *Falkenberg v. Baldwin*, 1977 WL 1025, at *4 (S.D.N.Y. June 13, 1977) (similar).

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

costs of investigating the action is legally erroneous.  "[D]efendants cannot be held

liable for the costs of defending a potentially baseless suit. . . . [D]amages must be

shown to flow directly from the wrongful acts of defendants, and not to the mere

commencement of legal proceedings against the Corporation." *Id.*[45]  The same is

true regarding Plaintiff's allegation of damage in connection with costs incurred

from the previous auditor and related to hiring a new auditor, and costs related to

internal audit reviews.  Unless predicate liability is established in the Securities

Class Action, these costs are not related to any wrongdoing on the part of the

Individual Defendants.

Similarly, Plaintiff's allegation that AOB has suffered reputational harm is

entirely speculative.  *See Symbol Techs.*, 762 F. Supp. at 517 ("boilerplate

language" that "defendants' acts have undermined [the company's] credibility in

the securities market" was "not sufficient to withstand a motion to dismiss");

*Isolagen*, 2007 WL 1101278, at *3 (rejecting as conclusory plaintiff's allegations

that the company "has suffered damages to its goodwill and reputation as well as

impairment to its ability to obtain debt or equity financing").[46]

---

[45] *Accord In re Cray Inc.*, 431 F. Supp. 2d 1114, 1134 (W.D. Wash. 2006) (the
weight of authority holds that "derivative claims are foreclosed when they merely
allege damages based on the potential costs of investigating, defending, or
satisfying a judgment or settlement for what might be unlawful conduct").

[46]  *Accord United Telecomms.*, 1993 WL 100202, at *2 (allegation that corporation
was "harmed by damage to its credibility" was "conclusory"); *Cray*, 431 F. Supp.

Plaintiff's allegation that AOB has suffered damages from compensating the Individual Defendants for their employment also fails to state a claim.  Like Plaintiff's claim for waste, executive compensation is protected by the business judgment rule.  *See Shenk v. Karmazin*, 867 F. Supp. 2d 379, 388 (S.D.N.Y. 2011) (board's decision on compensation is "entitled to great deference").

Finally, Plaintiff's allegation that AOB has suffered damages in the form of decreased market capitalization does not state a claim for derivative damages, because "a depressed price is, without more, a shareholder injury," not an injury to the corporation.  *Sargent v. Genesco, Inc.*, 492 F.2d 750, 765 (5th Cir. 1974).[47]

### 4.      The Complaint Fails To State A Claim For Waste

Plaintiff's claim of corporate waste cannot overcome the presumption of the business judgment rule.  The doctrine of waste is "confined to unconscionable cases where directors irrationally squander or give away corporate assets."  *Brehm v. Eisner*, 746 A.2d 244, 263 (Del. 2000).  To plead a claim for waste, Plaintiff must allege facts showing "a transfer of corporate assets that serves no corporate purpose; or for which no consideration at all is received."  *Id.*  If there was any consideration, "there should be no finding of waste."  *Id.*  The Delaware Chancery

---

2d at 1134 (allegations of corporate damages  based on "lost goodwill and a 'liar's discount'" were impermissibly conclusory).

[47]   *See also Rediker v. Geon Indus., Inc.*, 464 F. Supp. 73, 82 n.15 (S.D.N.Y. 1978) ("[P]laintiff has not stated a viable derivative claim . . . because the alleged reduction in the market price of [company's] stock is an injury to the shareholders and not to the corporation itself.").

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS

Court has noted that cases meeting the legal standard of waste are "like Nessie, possibly non-existent." *Steiner v. Meyerson*, 1995 WL 441999, at *5 (Del. Ch. July 19, 1995).

Plaintiff asserts that the Individual Defendants allegedly committed waste by "paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty." ¶ 98.  This allegation, however, does not a state a claim for corporate waste as the deference to directors' business judgment is "particularly broad in matters of executive compensation."  *In re Walt Disney Co. Derivative Litig.*, 731 A.2d 342, 362 (Del. Ch. 1998); *see also Shenk*, 867 F. Supp. 2d at 388 (board's decision on compensation is "entitled to great deference"); *Steiner*, 1995 WL 441999, at *5 (dismissing claim for waste based upon amount paid in termination agreement); *Zupnick v. Goizueta*, 698 A.2d 384, 388-89 (Del. Ch. 1997) (dismissing claim for waste based on grant of stock options).

### 5. The Complaint Fails To State A Claim For Unjust Enrichment

To prevail on an unjust enrichment claim, Plaintiff must prove "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience."  *G.K. Las Vegas Ltd. P'ship v. Simon Prop. Grp., Inc.*, 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006).  Plaintiff fails to state a claim for unjust enrichment

because he has not pled the required connection between the Individual

Defendants' enrichment and Plaintiff's impoverishment.

Plaintiff's unjust enrichment claim is predicated on his allegation that certain

of the Individual Defendants "were unjustly enriched as a result of the

compensation and director remuneration they received while breaching fiduciary

duties owed to AOB." ¶ 102.  Courts have routinely dismissed similar allegations

as conclusory.  *See, e.g.*, *Accuray*, 757 F. Supp. 2d at 935 (dismissing claim that

defendants "were unjustly enriched as a result of the compensation and director

remuneration they received while breaching fiduciary duties" because "[p]laintiffs

fail to allege how each [d]efendant was unjustly enriched at the expense of [the

company]"); *Freuler v. Parker*, 803 F. Supp. 2d 630 (S.D. Tex. June 30, 2011)

(rejecting similar unjust enrichment allegations as "conclusory").  In addition,

because Plaintiff's unjust enrichment claim is predicated on his other claims for

breach of fiduciary duty, it should be dismissed for the same reasons those claims

should be dismissed.  *See City of Roseville Employees' Ret. Sys.*, 2011 WL

5042061, at *12 (D.N.J. Oct. 24, 2011).

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court should stay this action pending final

resolution of the Securities Class Action and the Nevada Derivative Action.

Alternatively, if the Court declines to stay the case, the Court should dismiss this

action with prejudice because it is apparent that Plaintiff cannot improve his substantive allegations alleging a breach of the U.S. Outside Directors' duty of loyalty.  *See, e.g.*, *Walker v. Zenk*, 2008 WL 351250, at *12 (M.D. Pa. 2008) ("Dismissal with prejudice is appropriate where amendment of plaintiff's claims would be futile.").

Dated:  September 15, 2014            Respectfully submitted,

By its attorneys,
**GOODWIN PROCTER** LLP

By: _/s/  Katherine D. Seib_
          Katherine D. Seib
          The New York Times Building
          620 Eighth Avenue
          New York, NY  10018-1405
          Tel. (212) 813-8800
          Fax (212) 355-3333
          *kseib@goodwinprocter.com*

          Daniel J. Tyukody (*pro hac vice application pending*)
          Justin H. Iwata (*pro hac vice application pending*)

          601 S Figueroa Street, 41st Floor
          Los Angeles, California  90017-5704
          Tel.:  213.426.2500
          Fax.:  213.623.1673
          *dtyukody@goodwinprocter.com*
          *jiwata@goodwinprocter.com*

          *Counsel for Defendants*
          *LAWRENCE WIZEL, COSIMO PATTI and EILEEN BRODY*

MEMORANDUM ISO MOTION TO STAY OR IN THE ALTERNATIVE TO DISMISS